UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

```
_____
                              )
CONNIE SELLERS AND SEAN COOPER, )
INDIVIDUALLY AND AS THE        )
REPRESENTATIVES OF A CLASS OF  )
SIMILARLY SITUATED PERSONS, AND)
ON BEHALF OF THE BOSTON COLLEGE)
401(K) RETIREMENT PLAN I AND   )
THE BOSTON COLLEGE 401(K)      )
RETIREMENT PLAN II,            )
                              )
              Plaintiffs,      )
                              )
         v.                    )          CIVIL ACTION
                              )          NO. 22-10912-WGY
TRUSTEES OF BOSTON COLLEGE;    )
PLAN INVESTMENT COMMITTEE,     )
AND JOHN AND JANE DOES 1-10    )
                              )
              Defendant.       )
_____)
```

YOUNG, D.J.                                December 27, 2022

**MEMORANDUM OF DECISION**

## I.  INTRODUCTION

In this ERISA litigation, two former employees of Boston

College who participate in two retirement plans administered by

the college bring a complaint on behalf of themselves, the

retirement plans, and a proposed class of all others similarly

situated (collectively, the "Plan Participants") against the

trustees of Boston College (the "Trustees"), its investment

committee (the "Committee"), and ten John and Jane Does

(collectively, "Boston College").  Class Action Compl.

("Compl."), ECF No. 1, 1, ¶¶ 1-18.  Plan Participants allege that Boston College has breached its fiduciary duties under ERISA—first and foremost, the duty of prudence and the duty to comply with plan documents in violation of ERISA Sections 409 and 502, 29 U.S.C. § 1104(a)(1)(B) and (D) (count one).  Id. ¶ 1.  Plan Participants also allege that the trustees failed to properly monitor the Committee and the ten John and Jane Does (count two).  Ibid.

While each of Plan Participants' allegations taken individually are likely insufficient to survive a motion to dismiss, the totality of the pleaded facts raise a plausible--not merely conceivable--inference that Boston College breached their fiduciary duties under ERISA: specifically the duty of prudence, the duty to comply with plan documents, and the duty to monitor fiduciaries.  Thus, for the reasons articulated more fully below, this Court **DENIED** Boston College's Motion to Dismiss, ECF No. 12, and allows Plan Participants to proceed to discovery on both the breach of the duty of prudence and the failure to monitor claims.

### A.   Facts and Procedural History

In considering a motion to dismiss for failure to state a claim, this Court "take[s] the complaint's well-pleaded facts as true."  Flinn v. Minn. Life Ins. Co., 353 F. Supp. 3d 110, 114 (D. Mass. 2018) (citing Barchock v. CVS Health Corp., 886 F.3d

43, 48 (1st Cir. 2018)); see Ruivo v. Wells Fargo Bank, N.A., 766 F.3d 87, 90 (1st Cir. 2014) ("We examine whether the operative complaint states a claim for which relief can be granted, construing the well-pleaded facts in the light most favorable to the plaintiff, . . . accepting their truth and drawing all reasonable inferences in plaintiff's favor . . . .") (internal citations omitted).

On June 10, 2022, plaintiffs Connie Sellers ("Sellers") and Sean Cooper ("Cooper"), individually and as the representatives of a class of similarly situated persons, and on behalf of the two Boston College 401(k) retirement plans, filed a class action complaint against Boston College. Compl. 1, ¶¶ 16-18. The class action complaint alleges one count against all Boston College defendants (Count One: Breach of Fiduciary Duty of Prudence and Fiduciary Duty to Comply with Plan Documents) and one count against only the Trustees, for failing to monitor the Committee and the ten John and Jane Does (Count Two: Failure to Monitor Fiduciaries). Id. ¶¶ 116-35.

On August 15, 2022, pursuant to Federal Rule of Civil Procedure 12(b)(6), Boston College moved to dismiss both counts of Plan Participants' complaint, see Defs.' Mot. Dismiss Compl. ("Defs.' Mot."), ECF No. 12, and the issues have been fully briefed, see Defs.' Mem. Law Support Mot. Dismiss Compl. ("Defs.' Mem."), ECF No. 13; Pl.'s Opp'n Defs.' Mot. Dismiss

3

Compl. ("Pl.'s Opp'n"), ECF No. 19; Reply Support Defs.' Mot. Dismiss Compl. ("Defs.' Reply"), ECF No. 20.

Sellers and Cooper are two former Boston College employees who participate in two defined contribution retirement plans administered by Boston College via the Trustees, the Committee, and, without limitation, John and Jane Does 1-10.  Compl. 1, ¶¶ 16-18.  The putative class that Plan Participants seek to certify is defined as follows: "[a]ll persons, except Defendants and their immediate family members, who were participants in, or beneficiaries of the Plans, at any time between June 10, 2016 through the date of judgment . . . ."  Id. ¶ 106.

The Trustees is the legal entity responsible for overseeing Boston College--a private, Catholic educational institution in Middlesex and Suffolk Counties, Massachusetts.  Id. ¶ 20.

The Committee is charged with oversight of the investment policies for the two retirement plans, and the Investment Policy Statement acknowledges that "[m]embers of the Committee are 'fiduciaries' as defined by ERISA."  Id. ¶ 23.

Unknown "John Doe" Defendants 1-10 include, but are not limited to, Boston College officers, employees, board members, administrators, and/or contractors who are/were fiduciaries of the Plans within the meaning of ERISA Section 3(21)(A), 29 U.S.C. § 1002(21)(A) during the Class Period.  Id. ¶ 27.

4

### 1.    The Retirement Plans

Boston College sponsors two retirement plans in which the class plaintiffs participate, The Boston College 401(k) Retirement Plan I ("Plan I") and The Boston College 401(k) Retirement Plan II ("Plan II") (collectively, the "Plans"). Compl. ¶ 7.  The Plans are each defined contribution or individual account plans that include a cash or deferred arrangement, meaning that "[r]etirement benefits provided by each Plan are based solely on the amounts contributed to a participant account, and any income or gains (or losses) on such contributions, less any expense that may be allocated to such participant's account."  Compl. ¶ 34 (citing Summary Plan Description, Boston College 401(k) Retirement Plans I & II, dated January 1, 2015 at 6).

Both Plan I and Plan II are "employee pension benefit plan[s]" within the meaning of ERISA Section 3(2)(A), 29 U.S.C. § 1002(2)(A) and "defined contribution plan[s]" within the meaning of ERISA Section 3(34), 29 U.S.C. § 1002(34), covering eligible current and former Boston College employees, including each of the Plan Participants.  Id. ¶ 28.  Each Plan is a qualified plan under 26 U.S.C. § 401, commonly referred to as a "401(k) plan."  Ibid.  Boston College is the plan sponsor and plan administrator for both plans.  Id. ¶¶ 31-32 (citing Summary

Plan Description, Boston College 401(k) Retirement Plans I & II, dated January 1, 2015 at 18.).

As of December 31, 2020, Plan I had 3,631 "participants with account balances as of the end of the plan year" 2020. Id. ¶ 107 (citing Form 5500—Plan I, at 2). As of December 31, 2020, Plan II had 3,147 "participants with account balances as of the end o f the plan year." Ibid.[1]

In each Plan, the majority of investment options are TIAA or Fidelity funds, with four or fewer options from outside fund families available in each Plan. Id. ¶ 43. The retirement plans are governed by The Investment Policy Statement, which requires the Plans' fiduciaries to, among other things, ensure that the investment options made available to participants "charge fees that are reasonable for the asset class and investment style." Id. ¶ 120.

## II.  ANALYSIS

Under count one, Plan Participants' pleaded facts showing Boston College's alleged breach of their duty of prudence fall into two main categories. Compl. ¶¶ 12, 57-105. First, Participants allege that the retirement plans were subject to excessive fees in the form of higher-than-average recordkeeping fees and investment management fees. Id. ¶¶ 8-9, 65-67.

---

[1] Employees can participate in both plans and thus these figures may include some double counting. Compl. ¶ 29 n. 17.

Second, Participants allege that the investment options offered within the funds-- offerings from TIAA, CREF, and Fidelity specifically--were themselves imprudent investments and that Boston College should have removed them.  Id. ¶¶ 83-105.  Plan Participants also allege that Boston College failed to comply with documents and instruments governing the Plans.  Id. ¶¶ 116-27.  As to count two, Plan Participants assert that the Trustees breached their duty to monitor the investment committee and Jane and John Does 1-10.  Id. ¶¶ 128-135.

Upon reviewing the totality of the pleaded facts and drawing all inferences in favor of Plan Participants, this Court **DENIES** Boston College's motion to dismiss, acknowledging that the complaint sets forth sufficient evidence of a potential breach of ERISA's fiduciary duties as to allow Plan Participants to proceed to discovery on both counts of the complaint.

### A.   Standard of Review

To withstand a motion to dismiss, a complaint must "state a claim upon which relief can be granted . . . ."  Fed. R. Civ. P. 12(b)(6).  The complaint must include sufficient factual allegations that, accepted as true, "state a claim to relief that is plausible on its face."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974, 167 L. Ed. 2d 929 (2007).  Courts "draw every reasonable inference" in favor of the plaintiff, Berezin v. Regency Sav. Bank, 234 F.3d 68, 70 (1st

Cir. 2000), but they disregard statements that "merely offer legal conclusions couched as fact or threadbare recitals of the elements of a cause of action," Ocasio-Hernández v. Fortuño-Burset, 640 F.3d 1, 12 (1st Cir. 2011) (brackets, ellipsis, and quotations omitted).

On one hand, it is well established that a motion to dismiss for failure to state a claim in the ERISA context is an "important mechanism for weeding out meritless claims." Barchock v. CVS Health Corp., No. CV 16-061-ML, 2017 WL 1382517, at *4 (D.R.I. Apr. 18, 2017) (quoting Fifth Third Bancorp v. Dudenhoeffer, 573 U.S. 409, 134 S.Ct. 2459, 2471, 189 L.Ed.2d 457 (2014)), aff'd, 886 F.3d 43 (1st Cir. 2018).  A determination of whether an ERISA claim should be dismissed for failure to state a claim therefore "requires careful judicial consideration of whether the complaint states a claim that the defendant has acted imprudently."  Ibid. (citing Fed. Rule Civ. Proc. 12(b)(6)).

On the other hand, as is especially relevant in ERISA cases, Courts are to provide "some latitude" in cases in which "a material part of the information" required is controlled by defendants.  García-Catalán v. United States, 734 F.3d 100, 104 (1st Cir. 2013) (citing Menard v. CSX Transp. Inc., 698 F.3d 40, 45 (1st Cir. 2012)); see Lucey v. Prudential Ins. Co. of Am., 783 F. Supp. 2d 207, 211 (D. Mass. 2011) (Ponsor, J.) ("On a

motion to dismiss, the Court must draw every reasonable inference in favor of the plaintiffs.").

### B.  Count 1 - Breach of Fiduciary Duty of Prudence and Fiduciary Duty to Comply with Plan Documents

Under count one, Plan Participants allege that Boston College breached its duty of prudence and duty to act in accordance with the documents and instruments governing the plan, in violation of ERISA Section 404(a)(1)(B), 29 U.S.C. § 1104(a)(1)(B), and ERISA Section 404(a)(1)(D), 29 U.S.C. § 1104(a)(1)(D).  Compl. ¶¶ 1, 123.  Under this count, Plan Participants first assert that Boston College caused them to incur unreasonable fees during the class period in the form of high recordkeeping expenses and excessive investment management fees.  Id. ¶¶ 60-82.  Second, Plan Participants allege that Boston College ignored public red flags about certain investment offerings from TIAA and Fidelity, and that the continued inclusion of such investment offerings was contrary to Plan Participants' interests.  Id. ¶¶ 83-96.  Plan Participants allege that Boston College's failure to act with respect to these investment offerings was not justified by the investments' performance.  Id. ¶¶ 97-105.

The thrust of Plan Participants' allegations under count one can be summarized as follows:

> Defendants failed to prudently and objectively monitor
> the Plans' investments to ensure that each of the

> investments was and remained appropriate for the
> Plans. Defendants also failed to comply with the
> Investment Policy Statement. Defendants failed to
> remove those investments that were no longer
> appropriate. Defendants retained imprudent funds as
> Plan investments despite the availability of superior
> alternative investments that would have cost Plan
> participants significantly less and performed
> significantly better. Defendants failed to remove TIAA
> and Fidelity funds, and to investigate alternatives to
> them as recordkeepers, despite multiple, public red
> flags associated with each company.

Id. ¶ 121.  Plan Participants allege that such behavior, along

with allegations described elsewhere in the complaint,

constitutes a failure to discharge duties with the skill,

prudence, care and diligence under the circumstances then

prevailing to a prudent person, in violation of ERISA Section

404(a)(1)(B), 29 U.S.C. § 1104(a)(1)(B).  Id. ¶ 122.  Plan

Participants also allege that such conduct constitutes a breach

of Defendants' duty to act in accordance with the documents and

instruments governing the plan, requiring that all investments

"charge fees that are reasonable for the asset class and

investment style," in violation of ERISA Section 404(a)(1)(D),

29 U.S.C. § 1104(a)(1)(D).  Id. ¶ 123.

    In 1974, Congress enacted the Employee Retirement Income

Security Act (ERISA).  Pub.L. No. 93-406, 88 Stat. 829, codified

as amended at 29 U.S.C. §§ 1001-1461; see Merrimon v. Unum Life

Ins. Co. of Am., 758 F.3d 46, 50 (1st Cir. 2014).  ERISA, a

"comprehensive and reticulated statute," governs private

employee benefit systems, including retirement plans.  <u>Tracey</u> v.
<u>Massachusetts Inst. of Tech.</u>, No. CV 16-11620-NMG, 2017 WL
4453541, at *8 (D. Mass. Aug. 31, 2017) (Bowler, M.J.) (quoting
<u>Mertens</u> v. <u>Hewitt Assocs.</u>, 508 U.S. 248, 251, 113 S.Ct. 2063,
124 L.Ed.2d 161 (1993)), report and recommendation adopted in
part, rejected in part, 2017 WL 4478239 (D. Mass. Oct. 4, 2017)
(Gorton, J.)).  One of ERISA's principal goals is to afford
appropriate protection to employees and their beneficiaries with
respect to the administration of employee welfare benefit plans.
<u>Merrimon</u>, 758 F.3d at 50 (citing <u>Nachman Corp.</u> v. <u>Pension</u>
<u>Benefit Guar. Corp.</u>, 446 U.S. 359, 361-62, 100 S.Ct. 1723, 64
L.Ed.2d 354 (1980)).

Section 404(a) of ERISA requires a fiduciary to "discharge
[its] duties with respect to a plan solely in the interest of
the participants and beneficiaries and . . . for the exclusive
purpose of . . . providing benefits to participants and their
beneficiaries."  29 U.S.C. §1104(a)(1).  An ERISA fiduciary is
also obligated to follow the terms of the plan, so long as they
do not conflict with the statute.  <u>Id.</u> § 1104(a)(1)(D).  The
obligations imposed by ERISA, including the duties of loyalty
and prudence, are among "the highest known to the law."  <u>Moitoso</u>
v. <u>FMR LLC</u>, 451 F. Supp. 3d 189, 204 (D. Mass. 2020) (quoting
<u>Braden</u> v. <u>Wal-Mart Stores, Inc.</u>, 588 F.3d 585, 598 (8th Cir.

11

2009) (quoting <u>Donovan</u> v. <u>Bierwirth</u>, 680 F.2d 263, 272 n.8 (2d Cir. 1982))).

In order to state a claim under this provision, plaintiffs must establish a prima facie showing: (1) that defendants acted as the Plan's fiduciary; (2) that defendants breached their fiduciary duties; and (3) that the breach caused a loss to the Plan. <u>Tracey</u>, 2017 WL 4453541, at *9 (citing <u>Pegram</u> v. <u>Herdich</u>, 530 U.S. 211, 225-26, 120 S. Ct. 2143, 2152-53, 147 L. Ed. 2d 164 (2000); <u>Braden</u>, 588 F.3d at 594).  The parties do not dispute that Boston College is a fiduciary and that Plans I and II qualify as ERISA plans.  <u>See</u> Compl. ¶¶ 23, 117; <u>see generally</u> Def.'s Mem; Def.'s Reply.

As outlined in the following sections, Plan Participants have adduced several facts which demonstrate a plausible breach of the duty of prudence and the duty to comply with plan documents.  The Court thus **DENIES** Boston College's motion to dismiss as to count one of Plan Participants' complaint.

### 1.   Breach of Duty of Prudence (29 U.S.C. § 1104(a)(1)(B))

Plan Participants first assert that Boston College has breached their duty of prudence under ERISA.  Compl. ¶ 121.

As outlined above, the duty of prudence requires that a fiduciary act "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man

acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims."  29 U.S.C. § 1104(a)(1)(B); see 29 C.F.R. § 2550.404a-1 ("[T]he requirements of section 404(a)(1)(B) . . . are satisfied if the fiduciary: (i) Has given appropriate consideration to those facts and circumstances that, given the scope of such fiduciary's investment duties, the fiduciary knows or should know are relevant to the particular investment or investment course of action involved . . . .").  A fiduciary who breaches the duty of prudence must "make good" to the plan "any losses to the plan resulting from such breach."  29 U.S.C. § 1109(a).

When examining an alleged breach of the duty of prudence, the key question is "whether the fiduciary took into account all relevant information" in performing its duties under ERISA. Turner v. Schneider Electric Holding, Inc., 530 F.Supp. 3d 127, 133 (D. Mass. 2021) (Gorton, J.) (citing Moitoso, 451 F. Supp. 3d at 204 (internal citations and quotation marks omitted)). "Importantly, the Supreme Court has explained that the content of the duty of prudence turns on the circumstances prevailing at the time the fiduciary acts." Barchock v. CVS Health Corp., 886 F.3d 43, 44 (1st Cir. 2018) (internal quotations marks omitted) (quoting Fifth Third Bancorp v. Dudenhoeffer, 134 S. Ct. 2459, 2471 (2014) (quoting 29 U.S.C. § 1104(a)(1)(B))); see Estate of

Smith v. Raytheon Co., 573 F. Supp. 3d 487, 510 (D. Mass. 2021) (Woodlock, J.). "Accordingly, with respect to whether a complaint states a claim of imprudence under ERISA, 'the appropriate inquiry will necessarily be context specific.'" Barchock, 886 F.3d at 44 (citing Fifth Third Bancorp, 134 S. Ct. at 2471; 29 U.S.C. § 1104(a)(1)(B)).

Therefore, to determine whether a fiduciary acted in accordance with its duty of prudence, a court will evaluate conduct under the "totality of the circumstances" and assess a fiduciary's procedures, methodology and thoroughness. Barchock, 886 F.3d at 44 (citing DiFelice v. U.S. Airways, Inc., 497 F.3d 410, 418 (4th Cir. 2007)); see Glass Dimensions, Inc., ex rel. Glass Dimensions, Inc. Profit Sharing Plan & Tr. v. State St. Bank & Tr. Co., 931 F.Supp.2d 296, 305 (D. Mass. 2013) (Tauro, J.). To prevail on a breach of the duty of prudence claim, a plaintiff must establish that the fiduciary failed to employ appropriate procedures and as a result the retirement plan suffered losses. See Barchock, 886 F.3d at 44.

### a. Unreasonable fees

Plan Participants first allege that the Trustees, the Committee, and John and Jane Does 1-10--as fiduciaries of the plan--breached the duty of prudence by causing Sellers, Cooper, and the other plan participants to incur unreasonable fees during the class period. Compl. ¶¶ 57-59. Plan Participants

14

set forth several factual allegations to demonstrate the potentially unreasonable fees and draw reasonable inferences from such demonstrations.  This Court finds such factual allegations sufficient at this stage to state a plausible claim that Boston College failed to monitor and address unreasonable recordkeeping and investment management fees, potentially breaching their duty of prudence.

### i.    Recordkeeping expenses (TIAA and Fidelity)

The duty of prudence requires fiduciaries to "employ appropriate methods to investigate the merits of the investment."  Turner, 530 F.Supp.3d at 133.  Furthermore, it "involves a continuing duty to monitor investments and remove imprudent ones."  Ibid. (citing Tibble v. Edison Int'l, 575 U.S. 523, 135 S.Ct. 1823, 191 L.Ed.2d 795 (2015)); see Beddall v. State St. Bank & Tr. Co., 137 F.3d 12, 18 (1st Cir. 1998).  Plan Participants claim that in allowing the continuation of what they allege to be unreasonably high recordkeeping fees, Boston College breached its duty of prudence to properly monitor plans and remove traces of imprudent activity.  Compl. ¶¶ 57-73.

Recordkeepers help retirement investment plans track the balances of individual accounts, provide regular account statements, and offer informational and accessibility services to participants.  See, e.g., Hughes v. Northwestern University,

--- U.S. ---, 142 S.Ct. 737, 741, 211 L. Ed. 2d 558 (2022).

Retirement plans pay fees for such recordkeeping services.

Ibid.  Recordkeeping fees may be calculated as a percentage of

the assets for which the recordkeeper is responsible;

alternatively, these fees may be charged at a flat rate per

participant account.  Ibid.  Here, it is the plan fiduciaries

who arrange the way the recordkeeping fees are assessed.  Compl.

¶ 61.  It is through investments within the individual plans or

through payments to the plans directly that these recordkeeping

fees are satisfied.  Ibid.  In this case, the fees were paid

from plan assets and such payments occurred both directly in

which such fees are visible to Plan Participants and also

through the revenue sharing model where fees are less visible to

Plan Participants.  Ibid.

     Plan Participants note that since the actual decision-

making process as to fee allocation is only known to Boston

College, they have drawn "reasonable inferences" based on the

factual statements known to them.  Compl. ¶¶ 58-59.  Boston

College believes that this alone is grounds for dismissal as

they believe Plan Participants have failed to assert any

concrete factual claims and have only made mere speculations.

Def.'s Mem. 7.  Boston College believes Plan Participants simply

"anticipate that Plan I's total recordkeeping costs, once

revealed through discovery, will similarly reflect imprudence by

the fiduciaries" and go on to state that "the price of entry, even to discovery, is for the plaintiff to allege a factual predicate concrete enough to warrant further proceedings, which may be costly and burdensome." Id. 7-8 (citing DM Rsch., Inc. v. Coll. Of Am. Pathologists, 170 F.3d 53, 55 (1st Cir. 1999) (affirming dismissal); accord Jobs First Indep. Expenditure Pol. Action Comm. v. Coakley, No. 14-14338, 2016 WL 6661142, at *5 (D. Mass. Nov. 10, 2016) (Gorton, J.) (dismissing claim where plaintiffs "concede[d]" they could not "allege anything substantively and want[ed] to explore the claim through discovery")).

The case before this Court is not in the same posture as the cases Boston College cites to allege failure to state any plausible or substantive facts because those cases are not ERISA cases. Rather, in ERISA cases such as this one, a claim for a breach of fiduciary duty may survive a motion to dismiss, even absent any well-pleaded factual allegations relating directly to the methods employed by the ERISA fiduciary so long as the complaint "allege[s] facts that, if proved, would show that an adequate investigation would have revealed to a reasonable fiduciary that the investment at issue was improvident." See Pension Ben. Guar. Corp. ex rel St. Vincent memorial Retirement Plans v. Morgan Stanley Investment Management Inc., 712 F.3d 705, 718 (2nd Cir. 2013). In Barchock v. CVS Health Corp., the

District of Rhode Island stated that "in St. Vincent, the Second
Circuit emphasized that discovery should be allowed to flow
based on no more than an inference of imprudence despite the
absence of facts that directly address the process by which the
Plan was managed," so that ERISA plaintiffs can access inside
information that they lack.  No. CV 16-061-ML, 2017 WL 9324762,
at *5, (citing St. Vincent, 712 F.3d at 718), report and
recommendation adopted, No. CV 16-061-ML, 2017 WL 1382517
(D.R.I. Apr. 18, 2017), aff'd, 886 F.3d 43 (1st Cir. 2018).  The
court also emphasized that the inference must be anchored to
"more than the mere possibility of misconduct." Ibid. (citing
St. Vincent, 712 F.3d at 719).  Therefore, Plan Participants are
correct to state that they used factual inferences to
demonstrate the breach of duty of prudence and are correct to
explain could plausibly reveal, through discovery, the potential
imprudence of the fiduciaries.  See Compl. ¶ 68.

Plan Participants allege that they were paying above-market
recordkeeping and administrative fees, but such were hidden from
their view through the revenue sharing process.  Id. ¶ 63.  Plan
Participants realize that alone, the practice of revenue sharing
is not imprudent, however, they note it is recognized that
revenue sharing may hide the true scope of the fees attached to
the recordkeeping process.  Id. ¶ 62 (citing Tussey v. ABB,
Inc., 746 F. 3d 327, 336-37 (8th Cir. 2014)).  Plan Participants

demonstrate their allegations of imprudence as to both Plan I
and Plan II.  They do so by outlining the direct recordkeeping
compensation fees on the Form 5500s for both Plan I and Plan II
stating that Plan II, despite having slightly fewer participants
and is nearly a third smaller by asset size, had direct
compensation fees almost seven times higher than Plan I.  Compl.
¶ 64.  Plan Participants also cited a study done by NEPC, a
consulting group, which recently published the results of a
survey of defined contribution plans, reporting on factors such
as the fees plans paid which found no plans in the survey paid
above $70.  Id. ¶¶ 66-67.  By contrast, Plan II paid above $100
per participant, $124.92, which Plan Participants explain is
more than double the rate that many comparable plans paid.
Ibid.  As for Plan I, the Form 5500 does not report such
details, but the disclosures states TIAA receives a set
percentage in revenue sharing for each investment as an
"administrative fee," but no documents contain details about the
total amount TIAA actually receives.  Id. ¶ 68.  It is for this
reason that Plan Participants need discovery to access
information which they do not currently have available to them
as to Plan I and the indirect fees as to Plan II.  Id. ¶ 67-68.

Plan Participants note Boston College also failed to look
externally to the marketplace to determine what comparable plans
are paying their service providers to help in determining a

reasonable recordkeeping fee.  Compl. ¶ 70.  Boston College
alleges that Plan Participants cannot utilize failure to issue
Request for Proposal process ("RFPs"), which demonstrates a
comparison of their plan to the marketplace, to buttress a
breach of the duty of prudence since they believe Plan
Participants have failed to demonstrate facts that support
excessive fees.  Def.'s Mem. 10.  Boston College believes that
failing to conduct RFPs does not support a breach of the duty of
prudence for this reason, ibid.; however, as mentioned above, in
ERISA cases, plaintiffs often lack access to all information
needed to assert complete factual allegations and therefore,
reasonable inferences from facts available to them are
sufficient to state a claim.  See Barchock, 2017 WL 9324762; St.
Vincent, 712 F.3d at 718.  In assessing whether failure to
conduct RFPs does support a breach of the duty of prudence,
Turner explains "as part of the 'prudent man standard' one would
expect a fiduciary to obtain bids at some point[.]".  Turner,
530 F.Supp.3d 127, 137 (quoting Tracey v. Massachusetts Inst. of
Tech., No. 16-11620-NMG, 2017 WL 4478239, at *3 (October 4,
2017) (Gorton, J.)).  Failure to conduct RFPs further
demonstrates a plausible breach of the duty of prudence by
Boston College.  See Turner, 530 F.Supp.3d at 137; Tracey, 2017
WL 4478239, at *3.

Plan Participants also cite a joint investigation by the Securities and Exchange Commission and the New York Attorney General's Office related to the "marketing practices" of TIAA. Compl. ¶ 86.  The investigation ultimately found that TIAA targeted participants in TIAA-administered retirement plans and used the "false and misleading" marketing tactics.  Id. ¶ 89. Boston College argues that this investigation was not related to recordkeeping fees and was a wholly different entity than the one related to Plan I and although allegations related to the investigation were released during the class period, the settlements were not.  Def.'s Mem. 7-8.  The Court does not give much weight--if any at all--to this investigation since it is not entirely relevant to the facts and situation of this case.[2]

As mentioned above, in ERISA cases, it is recognized that plaintiffs often do not have access to certain information needed to make well-pleaded factual allegations, but such allegations are sufficient so long as they make "reasonable inferences" as Plan Participants here have likely done based on

---

[2] Plan Participants also mention Peter Lynch, an associate trustee of Boston College, who is also the Vice Chairman of Fidelity Management & Research Company.  Compl. ¶ 39.  Plan Participants believe Lynch may be the reason why Boston College has failed to remove Fidelity as a recordkeeper and has failed to remove their investment offering.  Ibid.  This does not correlate the breach of the duty of prudence but rather to a breach of loyalty, however, Plan Participants do not assert a breach of loyalty here.  Id. ¶ 105.

the information available to them.  The factual assertions here-
-the high recordkeeping fees associated with the Plans and the
failure to monitor and assess such fees through RFPs-- give rise
to a plausible claim for the breach of the duty of prudence by
Boston College and thus its motion to dismiss cannot be granted
on this basis.

### ii.    Investment management fees (TIAA real estate fund)

Plan Participants also set forth allegations of excessive
investment management fees for TIAA's real estate fund (this
assertion relates specifically to Plan I participants).  Compl.
¶ 74.  Plan Participants allege that Boston College's failure to
properly monitor, select, and manage the Plans' investment fees
during the class period demonstrates a further breach of the
duty of prudence.  Id. ¶¶ 74-82.  Plan Participants pleaded
facts alleging excessive investment management fees, when
combined with the other factual allegations in the compliant,
are sufficient to support denial of the motion to dismiss.

In their complaint, Plan Participants list the various
investment options made available to them by the Committee in
both Plan I and Plan II.  Compl. ¶¶ 76-77.  Plan Participants
explain that each fund has an associated "expense ratio," which
reflects the fee which Plan Participants are charged for
investment management and other services.  Id. ¶ 79.  The

expense which results from the expense ratio will reduce a Plan Participant's return and the compounding effect of that return. Ibid. Plan Participants allege that each of the Plans have investment options with unreasonably high expense ratios but focus their attention of Plan I's TIAA Real Estate Account. Id. ¶ 80. The TIAA Real Estate Account is the sixth largest holding in Plan I and TIAA has disclosed that Plan Participants pay a 0.865% expense ratio for the privilege of investing in this account. Ibid. Plan Participants state that courts have noted that the Real Estate Account is structured in a way that inevitably leads to higher expenses which means that, while typical real estate funds available to retirement plan participants average expense ratios of 0.59% to 0.64%, Plan I's participants are paying almost a third higher given the Real Estate Account structure. Ibid.

Boston College relies on a case coming out of the Second Circuit, Young v. GM Inv. Mgmt. Corp., 325 F. App'x 31, 33 (2nd Cir. 2009), as grounds for dismissal. In Young, the Second Circuit stated that when plaintiffs "allege[d] no facts concerning other factors relevant to determining whether a fee is excessive under the circumstances" the court ought dismiss the challenge to investment option fees. 325 F. App'x at 33; see Def.'s Mem. 12. In In re Biogen, Inc. ERISA Litig., a case from this District, the court states: "showing that any given

fund had cheaper alternatives or that it had unreasonably
excessive fees . . . may allow a trier of fact to 'reasonably
infer' . . . that the [defendants'] process was flawed."  No.
20-CV-11325-DJC, 2021 WL 3116331, at *7 (D. Mass. July 22, 2021)
(Casper, J.) (citing Leber v. Citigroup 401(k) Plan Inv. Comm.,
323 F.R.D. 145, 157 (S.D.N.Y. 2017)).  Such demonstration is not
dispositive of "the ultimate question regarding the 'methods
employed by the ERISA fiduciary' to investigate, select, or
monitor investments."  Ibid.

     In this case, Plan Participants have only set forth
potential factual allegations of excessive management fees in
regard to the TIAA Real Estate account.  Compl. ¶¶ 74-76.  This
alone is likely not sufficient to demonstrate imprudence, as
"merely alleging that a plan offered retail rather than
institutional share classes is insufficient to carry a claim for
fiduciary breach."  See In re Biogen, Inc. ERISA Litig., 2021 WL
3116331, at *8 (citing Marks v. Trader Joe's Co., No. 19-cv-
10942 PA (JEMx), 2020 WL 2504333, at *7 (C.D. Cal. April 24,
2020) (internal quotations omitted) (quoting White v. Chevron
Corp., No. 16-cv-0793-PJH, 2017 WL 2352137, at *14 (N.D. Cal.
May 13, 2017)); see also Hecker v. Deere & Co., 556 F.3d 575,
586 (7th Cir. 2009).  Plan Participants argue that that each of
the Plans have investment options with unreasonably high expense

ratios but, as is common with ERISA cases, will need discovery to fully develop the factual basis for this claim.  Compl. ¶ 80.

While a close call, taking these allegations of unreasonable and excessive investment management fees in connection with at least one account in combination with the unreasonable recordkeeping fees as true, Plan Participants have plead enough factual allegations based on the information available to them to state a plausible claim worthy of further investigation.  Boston College's motion to dismiss as to count one thus cannot be granted on the basis of unreasonable recordkeeping or investment management fees.

### b.   Imprudent Investment Options

In addition to alleging that Boston College's actions caused Plan Participants to incur impermissibly high recordkeeping and investment management expenses, Plan Participants also allege that certain investment offerings contained in Plans I and II were themselves imprudent investment options and that Boston College breached its fiduciary duty of prudence by failing to remove such investments from the plan in violation of ERISA Sections 409 and 502, 29 U.S.C. §§ 1109 and 1132.  Compl. ¶¶ 83-105.  Specifically, Plan Participants allege that Boston College "ignored multiple red flags about TIAA and Fidelity, including court decisions concluding that specific investments in the Plans were imprudent," Compl. ¶ 83, and that

Boston College's failure to act regarding the TIAA and Fidelity investments is not justified by the underperformance of such offerings, Compl. ¶¶ 97-105.  This Court finds the factual allegations regarding imprudent investment offerings sufficient to nudge the Plan Participants' claims from merely conceivable to plausible and thus cannot grant Boston College's motion to dismiss count one on the basis of imprudent investment options.

As discussed above, under the prudent man rule, courts must assess a fiduciary's prudence based on the fiduciary's conduct, rather than "the result of performance," and viewed from the perspective of the time of the challenged decision.  Barchock, 886 F.3d at 44 (quoting Bunch v. W.R. Grace & Co., 555 F.3d 1, 7 (1st Cir. 2009)); see, e.g., Glass Dimensions, Inc. v. State Street Bank & Trust Co., 931 F.Supp.2d 296, 305 (D. Mass. 2013). "[W]hether a fiduciary's actions are prudent cannot be measured in hindsight, whether this hindsight would accrue to the fiduciary's detriment or benefit."  Bendaoud v. Hodgson, 578 F. Supp. 2d 257, 271 (D. Mass. 2008) (quoting DiFelice v. U.S. Airways, Inc., 497 F.3d 410, 424 (4th Cir. 2007)); see Ellis v. Fid. Mgmt. Tr. Co., 883 F.3d 1, 10 (1st Cir. 2018); Velazquez v. Mass. Fin. Servs. Co., 320 F. Supp. 3d 252, 259 (D. Mass. 2018) (Zobel, J.).  In other words, the "prudent person" standard is an objective standard which focuses not on the results of an investment strategy but on the fiduciary's decision making

process.  See Tracey v. Massachusetts Inst. of Tech., 404
F.Supp.3d 356, 361 (D. Mass. 2019) (Gorton, J.).

     Although there is no specific set of factors that
fiduciaries must evaluate when considering investments, the duty
of prudence requires them to "employ appropriate methods to
investigate the merits of the investment." Turner, 530
F.Supp.3d at 133 (citing Moitoso, 451 F. Supp. 3d at 204-05).
"Cost-conscious management is fundamental to prudence in the
investment function." Tibble v. Edison Int'l, 843 F.3d 1187,
1197-98 (9th Cir. 2016) (quoting Restatement (Third) Of Trusts §
90, cmt. b)).  The "range of investment options and the
characteristics of those included options" can be very
pertinent, and "readily ascertainable facts against which the
plausibility of claims challenging the overall composition of a
plan's mix and range of investment options should be measured."
Tracey, 2017 WL 4453541, at *10.  The duty of prudence does not
apply only when selecting investments; ERISA imposes "a
continuing duty to monitor investments and remove imprudent
ones." Turner, 530 F. Supp. 3d at 133 (citing Tibble v. Edison
Int'l, 575 U.S. 523, 530, 135 S. Ct. 1823, 1829, 191 L. Ed. 2d
795 (2015)); see Moitoso, 451 F. Supp. 3d at 204-05.

     The relevant inquiry in this case, therefore, is whether
Boston College "took into account all relevant information in
performing its fiduciary duty under ERISA" by selecting--and

27

continuing to offer--the TIAA, CREF, and Fidelity investment options.  See Bunch v. W.R. Grace & Co., 532 F. Supp. 2d 283, 288 (D. Mass. 2008), aff'd, 555 F.3d 1 (1st Cir. 2009).

### i.   TIAA Real Estate Account and CREF Stock Account

First, Plan Participants take issue with the TIAA Real Estate Account and the CREF Stock Account.  Compl. ¶¶ 84-91. Over a quarter of Plan I participants' assets are invested in these two options alone.  Id. ¶ 76; Pls.' Opp. at 15.  Plan Participants allege that the CREF Stock Account has "continued to underperform lower-cost funds in the same category that measured their performance against the same benchmark index." Compl. ¶ 97.  The Participants compare three other "actively managed, largecap funds with similar underlying asset allocations: The Vanguard Diversified Equity Fund (Investor Class) (VDEQX), the Vanguard PRIMECAP Fund (Admiral) (VPMAX), and the Vanguard Capital Opportunity Fund (Admiral) (VHCAX)," Compl. ¶ 70 (citing Short v. Brown Univ., No. 17-cv-00318-M-PAS (D.R.I. July 6, 2017)), and find that the CREF Stock Account underperformed all three alternatives, id. ¶¶ 98-104.

Plan Participants allege that Boston College should have been on notice that the TIAA Real Estate Account and CREF Stock Account were imprudent investment options due to two recent published court opinions that mentioned these funds.  See Compl.

28

¶¶ 85, 91 (citing <u>Sweda v. Univ. of Penn.</u>, 923 F.3d 320, 331 (3d Cir. 2019); <u>Short v. Brown Univ.</u>, 320 F. Supp. 3d 363, 372 (D.R.I. 2018)).  Plan Participants allege that "the long-term retention of a substantial number of underperforming funds at higher than comparable costs gives rise to a plausible inference of an objectively imprudent monitoring process."  Pls.' Opp. 14 (citing <u>Baker v. John Hancock Life Ins. Co. (U.S.A.)</u>, No. 1:20-CV-10397-GAO, 2020 WL 8575183, *1 (D. Mass. July 23, 2020) (Sterns, J.)).

Plan Participants also allege that Boston College should have been on notice of the imprudence of the TIAA and CREF offerings due to a joint investigation by the Securities and Exchange Commission and New York's Attorney General, which "brought to light disturbing information about a TIAA subsidiary's marketing practices."  Compl. ¶ 86 (citing <u>In re Investigation by Letitia James of TIAACREF Individual & Institutional Services, LLC</u>, Assurance of Discontinuance at 1, 21-035 (July 13, 2021)).  Despite the mention of these funds in the two published opinions and in the New York Attorney General's investigation, both options remained in Plan I and have been retained throughout the Class Period.  <u>Id.</u>

Boston College counters as follows:

First, the Complaint provides undated data, only suggesting that the figures show "continued" underperformance, despite the fact that, as pled, the

> CREF Stock Account is currently outperforming two of
> the Vanguard funds on 1-year returns. . . .
>
> Second, a single, undated snapshot of one-, three-,
> and five-year returns as compared with three other
> investment options is hardly a long enough period to
> show that the Defendants' selection and retention of
> this fund was imprudent. . . .
>
> Third, two of the three Vanguard funds Plaintiffs
> prefer (the Vanguard Capital Opportunity Fund and the
> Vanguard PRIMECAP Fund) to the CREF Stock Account
> (Compl. ¶ 98) have been closed to new investors other
> than certain investors that utilize Vanguard services
> since at least 2015. . . .

Defs.' Mem. 14-15.  Boston College also emphasizes that with
respect to the TIAA Real Estate Account available in Plan I, the
complaint only compares a single data point for a variety of
funds not limited to real estate, Defs.' Reply 7, and that "the
performance of three Vanguard funds does not provide a
meaningful benchmark to the CREF Stock Account," id. at 9.

Despite Boston College's qualms, Plan Participants have
alleged sufficient facts at this stage to state a plausible
claim that the TIAA and CREF offerings were imprudent: disputes
about the proper industry metric with which to evaluate the
funds must be saved for subsequent proceedings; Plan
Participants have put forward sufficient evidence to plausibly
show consistent underperformance given the previous cases in
this Circuit dealing with these funds; and Plan Participants
have shown at least one viable alternative investment offering.

Boston College's first argument that Plan Participants have only set forth a single metric--an industry average for funds including non-real estate funds--with which to evaluate the TIAA funds is compelling; however, "[d]isputes over the appropriateness . . . of benchmarks . . . are inappropriate at the motion to dismiss stage." In re Biogen, Inc. ERISA Litig., 2021 WL 3116331, at *6 (citation omitted); see Short v. Brown Univ., 320 F. Supp. 3d 363, 372 (D.R.I. 2018) ("To the extent [Defendant] . . . presents different benchmarks to measure the Plans' performance, it raises factual issues that cannot be decided at the pleading stage.").

Second, as to whether the "single undated snapshot of one-, three-, and five-year returns alone is adequate to show the "consistent underperformance" required to create an inference of imprudence," it would seem that Plan Participants are not relying on the aforementioned data alone--these same funds were also called out as underperforming in an opinion in the District of Rhode Island, a court within the First Circuit. See Short, 320 F. Supp. 3d at 372 (citing Daugherty v. Univ. of Chi., No. 17C3736, 2017 WL 4227942, at *7-8 (N.D. Ill. Sept. 22, 2017) ("[T]he CREF Stock Account and TIAA Real Estate Account underperformed for years compared to industry standards, and that Defendant failed to prudently evaluate, monitor, and remove those investment options.") In other words, Plan Participants'

"duty of prudence claim does not rest solely on the performance of the [investment options] in hindsight." See Turner, 530 F.Supp.3d at 133.  Plan Participants are not simply alleging that the TIAA and CREF investment offerings were imprudent because of their poor performance as shown in the snapshot in the complaint, but that Boston College has breached its duty by not being aware of the historical imprudence of such investments as detailed in recent published court opinions.  See In re Biogen, Inc. ERISA Litig., 2021 WL 3116331, at *6 (citation omitted) ("Plaintiffs do not base their claim, however, in Defendants' initial investment in the [investment offering] or irregular performance alone. . . . Rather, their claim is rooted in Defendants' continued investment and failure to remove the [investment offering] following its consistent underperformance . . . .") (citation omitted); see also Baker v. John Hancock Life Ins. Co. (U.S.A.), No. 1:20-CV-10397-GAO, 2020 WL 8575183, at *1 (D. Mass. July 23, 2020) (Stearns, J.).

On the one hand, just as "nothing in ERISA requires every fiduciary to scour the market to find and offer the cheapest possible fund," Turner, 530 F.Supp.3d at 134 (quoting Hecker v. Deere & Co., 556 F.3d 575, 586 (7th Cir. 2009)), it would not be reasonable to impugn Boston College with the duty to scour every published court opinion for any mention of a fund included in their plan.  On the other hand, the fact that the TIAA and CREF

offerings made up such a large percentage of the investment
offerings in Plan I--nearly one quarter--justifies heightening
the burden imposed on Boston College regarding these specific
investment offerings. See Compl. ¶ 43 ("In each Plan, the vast
majority of investment options are TIAA or Fidelity funds, with
four or fewer options from outside fund families available in
each Plan"). In addition to the recent Brown decision in this
Circuit, the N.Y. A.G.'s report provides additional notice of
the potential imprudence using TIAA as a recordkeeper and
continuing to retain the TIAA and CREF offerings. See id. ¶¶
86-91. As Plan Participants have persuasively stated, "[t]he
fact that Defendants ignored multiple warning signs," including
the two published opinions and the New York A.G.'s report, when
combined with the "repeated underperformance of these two highly
significant offerings[,] supports a conclusion that Defendants'
entire monitoring process was flawed." Pl.s' Opp. at 15.

Finally, Boston College's third argument--that two of the
three funds Plan Participants identify as alternatives to the
CREF account were unavailable during the class period--is
compelling; however, it would seem logical that one viable
alternative is sufficient. See In re Biogen, 2021 WL 3116331,
at *6; Baker, 2020 WL 8575183, at *1.

While Plan Participant's evidence as to the imprudence of
the TIAA offerings is certainly not overwhelming, there do seem

to be sufficient factual allegations for it to be plausible that
Boston College failed to take "into account all relevant
information" when making the decisions to offer and continue to
have the TIAA offerings in question make up such a large
percentage of the plans' assets.  See Bunch v. W.R. Grace & Co.,
532 F. Supp. 2d 283, 288 (D. Mass. 2008), aff'd, 555 F.3d 1 (1st
Cir. 2009); Waldner v. Natixis Inv. Managers, L.P., No. CV 21-
10273-LTS, 2021 WL 9038411, at *5 (D. Mass. Dec. 20, 2021)
(Sorokin, J.); Toomey v. DeMoulas Super Markets, Inc., No. CV
19-11633-LTS, 2020 WL 3412747, at *3 (D. Mass. Apr. 16, 2020)).
Boston College's basis for dismissal of claim one thus must be
found elsewhere.

### ii.   Fidelity Investment Offerings

Second, Plan Participants allege that Boston College should
have been on notice of the high fees and underperformance of
certain Fidelity offerings, and that Boston College's failure to
remove such offerings from Plan II was imprudent.  Compl. ¶¶ 93-
94.  As with TIAA, Plan Participants point to court opinions
that should have alerted Boston College to the potential
imprudence of the Fidelity offerings.  Ibid. (citing Tracey,
2017 WL 4478239; 404 F. Supp. 3d 356; Moitoso, 451 F. Supp. 3d
at 218-19).  Additionally, Plan Participants allege that Boston
College "failed to move [assets in] Plan II into less expensive
versions of options already in the Plan."  Id. ¶ 95.

Specifically, Plan II "was invested in the 'K' share class for different Fidelity options, including the Fidelity Growth Company Fund and Fidelity Contrafund, the two largest options in the Plan. As Fidelity's own materials show, the Plan qualified for K6 shares."  <u>Ibid.</u>

Boston College first counters that the cases cited by Plan Participants to show the potential imprudence of the Fidelity investment options are merely allegations about Fidelity's investment and recordkeeping fees and that such cases have no bearing on the facts alleged here.  Defs.' Mem. 17 n.5 (citing <u>Sverdlov</u> v. <u>Eydinov</u>, 555 F. Supp. 3d 1, 3 (D. Mass. 2021) (Zobel, J.)).  Moreover, Boston College argues, one of the cases Plan Participants cite in support of this portion of their claim, <u>Moitoso</u>, involved a challenge to Fidelity's management of its own plan, including disloyalty allegations not relevant here.  <u>Ibid.</u> (citing 451 F. Supp. 3d 189).

Second, regarding the availability of less expensive share classes, Boston College states--correctly--that Plan Participants "provide no facts regarding the availability of these investment options prior to that date and whether they were available to Plan II" and "do not plead any facts showing that these lower-cost share classes provided the same features as the classes actually offered in Plan II."  Defs.' Mem. 16-17;

35

see also Def.'s Reply 9-10 (Plan Participants need to allege
more than a "speculative unpleaded supposition . . . .").

     With regard to the availability of cheaper share classes,
Plan Participants respond that there is evidence that the
alternative investments were available at the relevant time, but
that such a question is factual in nature and thus inappropriate
at the motion to dismiss stage.  Pls.' Opp. 18-19.  In any
event, Plan Participants claim that Boston College cannot
challenge the point that "an allegation that plan fiduciaries
failed to obtain identical lower-cost investment options is
sufficient to state a cause of action at the pleading stage."
Ibid. (citing Turner, 530 F. Supp. 3d at 135).

     While the evidence put forward by Plan Participants with
regard to the prudence of continuing to have the Fidelity
offerings make up such a large percentage of Plan II is
relatively thin, keeping in mind the information asymmetry at
play at this stage of ERISA cases, Plan Participants likely have
alleged sufficient facts to state a plausible claim that Boston
College breached its duty of prudence with regard to the
Fidelity offerings in Plan II, i.e., that Boston College's
process of selecting, monitoring, and continuing to offer the
Fidelity investment offerings in Plan II was flawed. See In re
Biogen, Inc. ERISA Litigation, 2021 WL 3116331, at *10 (citing

_Velazquez_ v. _Mass. Fin. Sevs. Co._, 320 F. Supp. 3d 252, 259 (D.
Mass. 2018) (Zobel, J.)).

First, as with the TIAA and CREF offerings in Plan I, the
specific mention of these funds as suspect in two court
opinions--this time both in the District of Massachusetts, the
district in which Boston College sits--is a circumstance unusual
enough to warrant, when combined with the significant percentage
of Plan II's assets invested in Fidelity funds, an expectation
that Boston College should have been on notice of the potential
imprudence of such offerings.  See _Moitoso_, 451 F. Supp. 3d at
218-19.  Though these cases do not directly call out the
Fidelity funds in question as imprudent as _Brown_ and _Sweda_ do
the TIAA and CREF investments, it is plausible that Boston
College nonetheless acted imprudently by failing to monitor
these cases and adjust Plan II's investments based on the
picture they painted of Fidelity funds.  See _ibid._

While Boston College is correct that Plan Participants "do
not plead when [the alternative] share classes became available,
nor do they plead that these cheaper share classes offered the
same features as the versions available in the plan," see Def.'s
Reply 10, Plan Participants are correct that they do not need to
include such details at the pleading stage and that non-
speculative allegations that cheaper share classes were
available are sufficient--when combined with the notice of the

potential imprudence of such investments to Boston College from court cases in this District--to survive a motion to dismiss. See Moitoso, 451 F. Supp. 3d 189 at 218-19.

While the relatively limited evidence put forward to show the imprudence each of the investment offerings in question (TIAA and CREF for Plan I; Fidelity for Plan II) is probably insufficient alone, when combined, Plan participants likely have put forward sufficient evidence to warrant an inference that Boston College plausibly breached their duty of prudence by continuing to have these investment options make up such a large percentage of the plans' offerings. See Bunch v. W.R. Grace & Co., 532 F. Supp. 2d 283, 288 (D. Mass. 2008), aff'd, 555 F.3d 1 (1st Cir. 2009); Waldner v. Natixis Inv. Managers, L.P., No. CV 21-10273-LTS, 2021 WL 9038411, at *5 (D. Mass. Dec. 20, 2021) (Sorokin, J.) ("Each of these allegations taken individually are not sufficient to plausibly state a claim . . . however, these facts taken together have "nudged [Plaintiffs'] claims across the line from conceivable to plausible" that Defendants selected and managed the funds in the Plan with imprudence and disloyalty.") (citation omitted); Toomey v. DeMoulas Super Markets, Inc., No. CV 19-11633-LTS, 2020 WL 3412747, at *3 (D. Mass. Apr. 16, 2020) ("[T]he Court is not determining that any single allegation or category of allegations suffices to allege imprudence or that, taken together, they establish imprudence,

but only that Plaintiff has plausibly alleged the claim in light of the totality of the allegations.").

The fact that TIAA or CREF and Fidelity, respectively, make up a large percentage of the investment offerings in the two plans also weighs in favor of Plan Participants establishing a plausible breach of the duty of prudence.  See id. at 11 (citing Braden v. Wal-Mart, 588 F.3d at 589, 596) ("[A] far narrower range of investment options like those presented posed a more plausible claim for imprudent management."); Moitoso, 451 F. Supp. 3d at 218-19.  Taking into account the totality of the circumstances, it is plausible that Plan Participants have alleged sufficient facts to raise "a plausible inference that the process for selecting or monitoring the [investment offerings] was deficient," specifically that such a monitoring process did not take into account the recent published court opinions in this Circuit calling into question the prudence of the funds in question and the fact that Plan II's assets could have potentially been converted to less expensive share classes. See, e.g., Turner, 530 F. Supp. 3d at 134; Kenney v. State St. Corp., 694 F. Supp. 2d 67, 76 (D. Mass. 2010) (Saris, J.).

Therefore, Boston College's motion to dismiss cannot be granted on the basis of the alleged imprudent investment options, especially when keeping in mind that "[n]o matter how clever or diligent, ERISA plaintiffs generally lack the insider

information necessary to make out their claims in detail unless and until discovery commences." See Tracey, 2017 WL 4478239, at *11 (citing Braden v. Wal-Mart Stores, Inc., 588 F.3d 585, 598 (8th Cir. 2009)).

Taking into account the totality of the circumstances, Plan Participants have plead sufficient factual allegations to state a plausible claim against Boston College for breach of the duty of prudence as a result of unreasonable fees and/or imprudent investment options.  Boston College's motion to dismiss count one thus cannot be granted on these bases.

### 2.   Breach of Duty to Comply with Plan Documents (29 U.S.C. § 1104(a)(1)(D))

Plan Participants also allege that Boston College's conduct constitutes a breach of their duty to act in accordance with the documents and instruments governing the plan, in violation of ERISA Section 404(a)(1)(D), 29 U.S.C. § 1104(a)(1)(D).  Compl. ¶ 123.  In demonstrating at least plausible factual allegations that Boston College breached its duty of prudence as to the Plans, Plan Participants have, de facto, proven that Boston College likewise breached their duty to act in accordance with the documents and instruments governing the plan.

As outlined in ERISA Section 404(a)(1)(D):

A fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and-- in accordance with the documents and instruments governing the plan insofar as such

> documents and instruments are consistent with the
> provisions of this subchapter and subchapter III.

29 U.S.C. § 1104(a)(1)(D).  According to Plan Participants, the
Plans' Investment Policy Statement is a document and instrument
governing the Plans within the meaning of ERISA Section 404.
Compl. ¶ 119.  The Investment Policy Statement requires the
Plans' fiduciaries to, among other things, ensure that the
investment options made available to participants "charge fees
that are reasonable for the asset class and investment style."
Ibid.  The Investment Policy Statement also sets forth a
procedure for the fiduciaries to monitor and if necessary,
replace or eliminate investment options.  Ibid.  Plan
Participants allege that Boston College breached their duty to
act in accordance with their own policy which is considered a
"document and instrument governing the plan" under ERISA Section
404, 29 U.S.C. § 1104.  Id. ¶ 120.

In demonstrating a breach of the duty of prudence on the
part of Boston College, Plan Participants laid out plausible,
reasonable inferences based on the facts available to them to
demonstrate that Boston College also, potentially, breached
their own Plans' Investment policy statement.  See Compl. ¶¶
119-122.  The claim of breach of the duty to act in accordance
with the documents and instruments governing the plan is
recognized by both Plan Participants and Boston College as being

directly related and rather intertwined in the breach of the
duty of prudence.  See Pls.' Opp 19.  Plan Participants again
point to the fact that Boston College failed to remove
investments that were no longer appropriate and retained
imprudent funds despite the availability of superior alternative
investments that would have cost less and performed better.
Compl. ¶ 121.  Plan participants also again point to Boston
College's failure to remove TIAA and Fidelity funds, and to
investigate alternatives to them as recordkeepers as breaches of
the duty to comply with plan documents.  Id.

Likewise, as with the breach of the duty of prudence,
Boston College again argues that Plan Participants have failed
to assert any factual claims that demonstrate a breach of their
duty to act in accordance with the documents and instruments
governing the plan.  Defs.' Mem. 17.

So long as the facts that are alleged as to the duty of the
breach of prudence are plausible, as they are here, the breach
as of the duty to act in accordance with the documents and
instruments governing the plan is therefore plausible as well.
See Tracey, 2017 WL 4478239, at 4 ("Magistrate Judge Bowler
correctly observes that, ordinarily, a duty to monitor other
fiduciaries is derivative of plaintiffs' other claim").
Accordingly, given that Plan Participants have alleged
sufficient facts supporting a claim for breach of the duty of

prudence, they have likewise stated a plausible claim for breach
of the duty to comply with plan documents.  See ibid.

* * *

Given that Plan Participants have alleged sufficient facts
to nudge their claims for the breach of the duty of prudence and
breach of the duty to comply with plan documents from merely
conceivable to plausible, Boston College's motion to dismiss is
**DENIED** as to count one.

### C.   Count 2 – Failure to Monitor

Under count two, Plan Participants challenge the Trustees'
failure to monitor fiduciaries and service providers to the
Plans under ERISA Sections 409 and 502, 29 U.S.C. §§ 1109(a),
1132(a)(2), and 1132(a)(3).  Compl. ¶ 1.  Plan Participants
allege that the Trustees breached their duty to monitor the
other Defendants--the investment committee and Jane and John
Does 1-10--in the following ways:

a)   failing to monitor and evaluate the performance
     of the Plan Investment Committee and failing to
     have a system in place for doing so. The Trustees
     of Boston College did nothing as the Plans
     suffered significant losses as a result of the
     Committee's imprudent actions and omissions;

b)   failing to monitor the processes by which those
     responsible selected and monitored Plan
     investments. The monitored fiduciaries actions
     and inactions would have alerted a prudent
     fiduciary to the breaches of fiduciary duties
     outlined above; and

c)   failing to remove Investment Committee members
     whose performance was inadequate as demonstrated
     by their retaining imprudent, excessively costly,

> and poorly performing investments within the Plan
> to the detriment of the Plan and Plan
> participants' retirement savings.

Compl. ¶ 132.  Plaintiffs claim that "ERISA Sections 409 and

502, 29 U.S.C. §§ 1109(a), 1132(a)(2), and 1132(a)(3), render

the Trustees liable to restore to the Plans all losses suffered

as a result of the fiduciary breaches that resulted from its

failure to properly monitor its appointed fiduciaries on the

Investment Committee."  Id. ¶ 134.  Plan Participants allege

that the Trustees breached their fiduciary monitoring duties in

numerous ways, including monitoring and evaluating the

performance of the Committee and failing to have a system in

place for doing so, failing to monitor the process for selecting

investments, failing to remove Committee members whose

performance was inadequate.  Id. ¶¶ 131-32.

As outlined above, ERISA Sections 409 and 502 require

monitoring fiduciaries to ensure that fiduciaries are satisfying

their obligations.  29 U.S.C. §§ 1109(a); 29 U.S.C. §§

1132(a)(2), 1132(a)(3).  These obligations include those with

respect to investment selections, monitoring of service

providers, and compliance with plan documents.  29 U.S.C. §§

1109(a); 29 U.S.C. §§ 1132(a)(2), 1132(a)(3).  Monitoring

fiduciaries are required to act promptly to protect plans,

participants, and beneficiaries when monitored fiduciaries

breach their own obligations.  Compl. ¶ 131.

In <u>Tracey</u> v. <u>Massachusetts Inst. of Tech.</u>, the Court adopted the understanding that "plaintiffs' claims for failure to monitor [will] continue insofar as they derive from plaintiffs' other claims."  No. CV 16-11620-NMG, 2017 WL 4478239, at *4 (D. Mass. Oct. 4, 2017) (Gorton, J.).  To the extent that plaintiffs have plausibly alleged that defendants breached their fiduciary duties directly, plaintiffs have also plausibly alleged that defendants have breached their duty to monitor.  <u>Ibid.</u>  This Court agrees that so long as Plan Participants have alleged plausible facts to show that Boston College has potentially breached its duty of prudence, it has also stated a plausible claim for the potential failure to monitor on the part of the Trustees.

                           * * *

The Court thus **DENIED** Boston College's motion to dismiss as to count two.

### III. CONCLUSION

For the foregoing reasons--specifically because Plan Participants have alleged sufficient facts to raise a plausible inference that (1) Boston College breached its duty of prudence and duty to comply with plan documents by subjecting the plans to excessive record keeping fees and by offering imprudent investment offerings and (2) that the Trustees breached their duty to monitor the Committee and the ten John and Jane Does--

45

this Court **DENIES** Boston College's Motion to Dismiss, ECF No.
12, and shall allow both counts of Plan Participants' complaint
to proceed to discovery.


                                        /s/ William G. Young
                                       WILLIAM G. YOUNG
                                            JUDGE
                                           of the
                                      UNITED STATES[3]

---

[3] This is how my predecessor, Peleg Sprague (D. Mass. 1841-
1865), would sign official documents. Now that I'm a Senior
District Judge I adopt this format in honor of all the judicial
colleagues, state and federal, with whom I have had the
privilege to serve over the past 44 years.