# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CONNIE SELLERS AND SEAN COOPER, INDIVIDUALLY AND AS THE REPRESENTATIVES OF A CLASS OF SIMILARLY SITUATED PERSONS, AND ON BEHALF OF THE BOSTON COLLEGE 401(K) RETIREMENT PLAN I AND THE BOSTON COLLEGE 401(K) RETIREMENT PLAN II,<br><br>    Plaintiffs,<br><br>V.<br><br>TRUSTEES OF BOSTON COLLEGE, PLAN INVESTMENT COMMITTEE, and JOHN and JANE DOES 1-10,<br><br>    Defendants. | Civil Action No.: 22-cv-10912-WGY |

**PLAINTIFFS' ASSENTED TO MOTION FOR CLASS CERTIFICATION**

## Table of Contents

Factual Background ............................................................................................................ 2

    A.   Plaintiffs' Claims on Behalf of the Plans ............................................................. 3

    B.   The Proposed Class and Subclasses ..................................................................... 6

Argument ............................................................................................................................ 6

    A.   Class Certification Standard ................................................................................. 6

    B.   This Case Meets All of the Criteria for Class Actions .......................................... 7

        1.   Thousands of Class Members Make Joinder Impracticable (Numerosity). ................. 7

        2.   The Subclasses Share Multiple Common Issues (Commonality). ............................... 8

        3.   Plaintiffs' Claims Arise From the Same Fiduciary Conduct That Affected All Class Members' (Typicality). ............................................................................ 9

        4.   Plaintiffs Have No Conflicts With The Class and Their Counsel Are Experienced in Class Litigation (Adequacy). ................................................................. 10

        5.   Plaintiffs' Claims Are Paradigmatic Examples of Claims Appropriate for Certification Under Rule 23(b)(1)(B). .................................................................. 11

Conclusion ........................................................................................................................ 12

Exhibit 1:    Excerpts of 2016 Forms 5500
Exhibit 2:    Investment Policy Statement
Exhibit 3:    Excerpt of 2018 Fiduciary Investment Advisors RFP Summary
Exhibit 4:    Excerpt of 2016 Fiduciary Investment Advisors Report
Exhibit 5:    Excerpt from 2016 Report of Plan I Participants' Holdings
Exhibit 6:    Affidavit of Stephen Churchill
Exhibit 7:    Affidavit of Osvaldo Vazquez

Plaintiffs Connie Sellers and Sean Cooper move to certify this case as a class action, with the Defendants' assent. Plaintiffs bring this case pursuant to their statutory right, under the Employee Retirement Income Security Act of 1974 ("ERISA"), to sue in a representative capacity on behalf of their plan, to recover any losses resulting from a breach of fiduciary duty, and to obtain equitable relief for their plan. 29 U.S.C. §§ 1132(a)(2), 1109; *see also, e.g.*, *Evans v. Akers*, 534 F.3d 65, 68, 70-71 (1st Cir. 2008). Courts have long found cases precisely like this to be "'paradigmatic examples of claims appropriate for certification as a Rule 23(b)(1) class'" given the "derivative nature of claims under § 1132(a)(2)." *Tracey v. MIT*, No. CV 16-11620-NMG, 2018 WL 5114167, at \*6 (D. Mass. Oct. 19, 2018) (quoting *Hochstadt v. Boston Sci. Corp.*, 708 F. Supp. 2d 95, 105 (D. Mass. 2010)); *see also Hochstadt*, 708 F. Supp. 2d at 105 (collecting cases). And courts have just as consistently certified classes involving similar claims against university-sponsored plans. *See Tracey*, 2018 WL 5114167, at \*7 (certifying class and citing opinions certifying classes involving NYU, Emory, and Duke plans).

Even though discovery is ongoing, the record shows that Defendants have taken common actions affecting participants of both plans at issue. While Boston College ("BC") maintains two similar plans, a single committee—Defendant Plan Investment Committee ("Committee")—makes decisions for all participants in both plans. The Committee operates under a single Investment Policy Statement, in effect since 2006, that makes no distinction between the plans. A single Summary Plan Description gives participants details for both plans. *See* Compl. ¶ 28.

The decisions that will be challenged in this case include, among others, decisions affecting all participants. As one example, the Committee did not conduct periodic requests for proposals in an effort to control recordkeeping costs. And on the single occasion when the Committee did conduct a request for proposals, back in 2018, it failed to take advantage of

1

opportunities to secure significantly lower costs. With these and other decisions, the Committee's actions have affected all of the thousands of participants in the two plans, all of whom share a common interest in recovering losses and obtaining appropriate equitable relief to prevent future harm.

Plaintiffs move for certification pursuant to Rule 23(b)(1). Following good faith efforts to reduce the scope of any disputed issues, Defendants agreed to assent to class certification if the Plaintiffs sought certification of four subclasses instead of a single class. Those subclasses are based on the plan involved and the type of claims at issue.[1] *See* Fed. R. Civ. P 23(b)(1), (c)(5).

For these reasons, and as discussed in more detail below, Plaintiffs respectfully request that this Court certify four subclasses of plan participants, appoint Plaintiffs as named representatives, and appoint Fair Work, P.C. as class counsel. Defendants do not oppose the relief sought in this Motion.

**Factual Background**

Plaintiffs Sellers and Coopers are participants in The Boston College 401(k) Retirement Plan I ("Plan I") and/or The Boston College 401(k) Retirement Plan II ("Plan II"). *See* Compl. ¶¶ 16-17. Each Plan is an ERISA-governed, defined contribution plan with thousands of participants. *See id.* ¶¶ 7, 34. As of December 31, 2020, Plan I had 3,637 participants while Plan II had 3,147. Compl. ¶ 106; *see also* (Excerpts of 2016 Forms 5500 [1]).[2]

---

[1] These are (1) a class of **Plan I** participants challenging **recordkeeping expenses**, (2) a class of **Plan I** participants challenging **investments**, (3) a class of **Plan II** participants challenging **recordkeeping expenses**, and (4) a class of **Plan II** participants challenging **investments**. In proposing these subclasses, Defendants cited administrative efficiency as a basis for the subclasses. *See generally Perry v. Equity Residential Mgmt., L.L.C.*, No. CIV.A. 12-10779-RWZ, 2014 WL 4198850, at *7 (D. Mass. Aug. 26, 2014).

[2] The numbers in brackets refer to the exhibits attached to this motion. The Court entered a Protective Order on March 20, however the Court also ruled that it would impose no restrictions on documents filed with the Court. (Dkt. No. 35) To honor the spirit of the agreement, Plaintiffs have minimized the number of exhibits and filed excerpts of documents when possible.

2

Defendant BC is the named fiduciary of each Plan and is ultimately responsible for their operation. *See id.* ¶ 21; 29 U.S.C. § 1102(A). BC has delegated oversight of both Plans to the Committee, which serves as the Plan Administrator for both Plans. Compl. ¶¶ 23-24; 29 U.S.C. § 1102(A). The Committee makes decisions for both Plans. Operating under an Investment Policy Statement that has been in place since 2006, the Committee has a practice to hold a single meeting to consider investment, recordkeeping, and other issues for both Plans. (Investment Policy Statement [2]). The Committee has engaged a consultant, Fiducient Advisors (formerly known as Fiduciary Investment Advisors), which provides input to and prepares reports for the Committee, with each report covering both Plans. (*See, e.g.,* 2018 RFP Summary Excerpt [3]).

A. **Plaintiffs' Claims on Behalf of the Plans**

As summarized in this Court's decision denying Defendants' Motion to Dismiss, Plaintiffs brought suit on behalf of their Plans to remedy Defendants' fiduciary breaches along a range of issues. While detailed evidence of Defendants' fiduciary process was unavailable to Plaintiffs when the Complaint was filed, publicly available evidence indicates that this process was flawed and harmed the Plans and their participants, violating ERISA and subjecting them to excessive fees for recordkeeping and expensive, underperforming investment options. *See* Opinion (Dkt. No. 32) at 6-7. In addition, that same evidence shows that the fiduciaries who appointed the Committee violated their ERISA duty to monitor.

As to Plaintiffs' recordkeeping claims, publicly available evidence indicates that Defendants failed to monitor the fees paid to TIAA and Fidelity. The Plans' Forms 5500 show, for example, that Plan II paid much more to Fidelity than did Plan I, despite having fewer participants and fewer assets. Opinion at 19. The Complaint also alleges that neither Plan had changed recordkeepers in decades, despite a marketplace offering competitive options for the

3

same services. *Id.* at 19-20. Further, the Complaint cites industry data, including recordkeeping costs, to show a robust market for recordkeeping services and to show how much the participants in the BC Plans were being overcharged. *See id.* at 19.

Plaintiffs also identify evidence that Defendants' monitoring of both Plans' investment options violated ERISA. For example, the TIAA Real Estate Account in Plan I was overly expensive compared to similar funds, and there was no performance justification for keeping such a pricy option on the platform. Opinion at 22-23. Both the Real Estate Account and the CREF Stock Account showed extensive, historic underperformance, and there were numerous red flags justifying removal of these options. *Id.* at 28-30. Indeed, several other suits, including within the First Circuit, pointed to the funds' underperformance, and other courts found that maintaining those options raised at least a prima facie indication of imprudence. *See id.* at 29-31. Defendants also failed to move into less expensive but otherwise identical versions of the Fidelity Freedom Funds available on Plan II's platform, and several Fidelity options had themselves been identified in litigation as problematic. *Id.* at 36-37. Each of the flagged investments made up a significant portion of the Plans' invested assets, with the CREF Stock Account alone accounting for a fifth of Plan I's assets. *See id.* at 39-40. Defendants' failure to take timely action as to these options and the excessive recordkeeping costs violated the Plan's Investment Policy Statement as well. *See id.* at 40-42.

Finally, the opinion concluded that Plaintiffs pled sufficient facts to show that Defendant BC had violated its duty to monitor the Committee, noting the sufficiency of the Complaint as to the underlying claims and citing an earlier opinion in *Tracey*. *See* Opinion at 44-45 (citing *Tracey v. MIT*, No. CV 16-11620-NMG, 2017 WL 4478239, at *4 (D. Mass. Oct. 4, 2017)).

Discovery to this point has supported Plaintiffs' allegations and underscored how

Defendants' decisionmaking has affected all participants of both Plans. Early in the class period, for example, the Committee faced a foundational question of whether to maintain its unusual structure of two plans, a decision affecting all participants in both Plans. At one point in 2016, Fiducient Advisors (then Fiduciary Investment Advisors) suggested that the Committee "[r]eview the current multi-plan, multi-vendor construct." (2016 Report Excerpt [4]). The Committee never consolidated the Plans, which had several implications. It prevented Defendants from leveraging the Plans' combined size to strike a better, and less expensive, deal for recordkeeping. *See generally Short v. Brown Univ.*, 320 F. Supp. 3d 363, 370 (D.R.I. 2018) (holding claim that single plan's maintaining two recordkeepers led to imprudent fee structure). The decision also delayed both Plans from reaching higher asset thresholds, which qualify for more advantageous share classes and lower fees. Put simply, if Defendants had "picked a horse," the combined Plan more likely would have had sufficient funds to qualify for less expensive share classes months, or even years, earlier.

In addition, while the Complaint alleged, on information and belief, that the Plans did not conduct an RFP, the actual record is even worse. In 2018, evidently for the first time in the Plans' decades of existence and likely in response to ERISA suits against peer institutions, Fiducient finally conducted an RFP for both Plans. It obtained bids from five vendors— incumbents TIAA and Fidelity, as well as Empower, Vanguard, and Transamerica. (2018 RFP Summary Excerpt [3]). Again faced with the question of maintaining two Plans, this time with concrete data about the higher costs of doing so, the Defendants again refused to consolidate them. At the time, Plan I participants were paying $90 in recordkeeping costs, while Plan II participants were paying approximately $57. The RFP resulted in two separate providers offering recordkeeping services for only $31, provided there was a single plan. Had the Committee

decided to consolidate the Plans and engage one recordkeeper, not only would they have directly saved participants millions in recordkeeping costs, but they could have ensured participants had higher quality investments available and more quickly qualified for less expensive share classes.

### B.     The Proposed Class and Subclasses

Plaintiffs bring this action under 29 U.S.C. § 1132(a)(2) on behalf of the Plans and pursue claims on the Plans' behalf. *See supra* at 1; *Evans*, 534 F.3d at 68. In the Complaint, Plaintiffs proposed a class of "[a]ll persons, except Defendants and their immediate family members, who were participants in, or beneficiaries of the Plans, at any time between June 10, 2016 through the date of judgment." Compl. ¶ 106. Through this Motion, as discussed above, Plaintiffs further propose that this class be subdivided into four subclasses. *See supra* n.1.

## Argument

### A.     Class Certification Standard

Under Rule 23, Plaintiffs must show that all of the requirements of Rule 23(a) and one of the elements of Rule 23(b) are satisfied. *Prinzo v. Hannaford Bros. Co., LLC*, 343 F.R.D. 250, 251 (D. Mass. 2023) (citing *Smilow v. Sw. Bell Mobile Sys., Inc.*, 323 F.3d 32, 38 (1st Cir. 2003)). Each subclass must satisfy Rule 23's requirements. *Perry*, 2014 WL 4198850, at *7.

Rule 23(a) requires a showing that: (1) the class is so numerous that joinder of all members is impractical (numerosity), (2) there are questions of law or fact common to the class (commonality), (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class (typicality), and (4) the representative parties will fairly and adequately protect the interests of the class (adequacy). Fed. R. Civ. P. 23(a).

Under Rule 23(b)(1)(B), Plaintiffs must show that prosecuting separate actions by individual class members would create a risk of adjudications with respect to individual class

6

members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests. As discussed below, all of these requirements are satisfied.

In addition to satisfying the Rule's elements, the proposed classes also advance the underlying purposes of class actions, an important consideration for courts' exercising their discretion at the class certification stage. Not only would certifying a class advance "the efficiency and economy of litigation," *Am. Pipe & Constr. Co. v. Utah*, 414 U.S. 538, 553 (1974), but it would promote the important goal of deterring statutory violations. *Diakos v. HSS Sys., LLC*, 137 F. Supp. 3d 1300, 1307 (S.D. Fla. 2015) ("Class-action lawsuits were designed to be effective tools for deterring wrongdoing."); *accord Mullins v. Direct Dig., LLC*, 795 F.3d 654, 668 (7th Cir. 2015).

### B. This Case Meets All of the Criteria for Class Actions.

#### 1. Thousands of Class Members Make Joinder Impracticable (Numerosity).

To satisfy Rule 23(a)(1), a class must be "so numerous that joinder . . . is impracticable." Fed. R. Civ. P. 23(a)(1). This is a "low threshold," which is generally satisfied when the putative class exceeds 40 members. *Garcia-Rubiera v. Calderon*, 570 F.3d 443, 460 (1st Cir. 2009) (citation omitted). Here, with thousands of participants in each Plan, *see supra* at 2, each recordkeeping subclass satisfies numerosity. The investment subclasses likewise satisfy numerosity, both because Defendants' breaches affected the Plans' investments uniformly and because almost all Plan investments had at least several hundred participants. (*See, e.g.,* Excerpt from 2016 Report of Plan I Participants' Holdings [5] (listing 1,501 participants invested in the CREF Stock Account in 2016); *see also McCuin v. Sec'y of Health & Hum. Servs.*, 817 F.2d

7

161, 167 (1st Cir. 1987) ("[D]istrict courts may draw reasonable inferences from the facts presented to find the requisite numerosity.").

### 2. The Subclasses Share Multiple Common Issues (Commonality).

To satisfy Rule 23(a)(2)'s requirement that "questions of law or fact" be "common to the class," Plaintiffs must identify an issue that by its nature "is capable of classwide resolution— which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Dukes v. Wal-Mart Stores, Inc.*, 564 U.S. 338, 350 (2011). "Rule 23(a)'s requirement of commonality is a low bar, and courts have generally given it a 'permissive application.'" *Prinzo*, 343 F.R.D. at 252 (quoting *Fleming v. Select Portfolio Servicing*, 342 F.R.D. 361, 365 (D. Mass. 2022)). And "[c]ommonality demands only the existence of a "*single issue common* to all members of the class." *Id.* (quoting *Natchitoches Parish Hosp. Serv. Dist. v. Tyco Int'l.*, Ltd., 247 F.R.D. 253, 264 (D. Mass. 2008)) (emphasis in original).

Here, Plaintiffs' claims and each of the subclasses readily clear this low bar because there are numerous common issues. For example, as to the classes challenging recordkeeping expenses, determining whether Defendants breached their fiduciary duty will focus on common questions that will have common answers, such as (1) why did the Defendants maintain two plans when doing so resulted in higher recordkeeping expenses, (2) why did the Defendants fail to conduct periodic requests for proposals to reduce expenses, and (3) to what extent was the Defendants' refusal to change recordkeepers the result of improper influence? Similarly, as to the investment classes, common questions with common answers include (1) how did the maintenance of two smaller plans, rather than having a larger combined plan, affect the availability of lower-cost share classes, and (2) why did the Defendants fail to act more

8

aggressively when certain investment options were flagged as underperforming or otherwise problematic? Any of these issues, standing alone, suffices to establish commonality. *See, e.g.*, *Tracey*, 2018 WL 5114167, at *4. Indeed, because the focus is on Defendants' conduct, and because that conduct will be demonstrated with common evidence (such as meeting minutes or consultant reports) commonality is satisfied. *See, e.g.*, *Kanawi v. Bechtel Corp.*, 254 F.R.D. 102, 109 (N.D. Cal. 2008) (holding claims satisfied commonality because "the common focus is on the conduct of Defendants: whether they breached their fiduciary duties to the Plan as a whole . . . [and] whether they made imprudent investment decisions").

### 3. Plaintiffs' Claims Arise From the Same Fiduciary Conduct That Affected All Class Members' (Typicality).

Typicality likewise is not demanding, and the element is "met when the representative's claims arise[ ] from the same event or practice or course of conduct that gives rise to the claims of other class members, and . . . are based on the same legal theory." *Garcia-Rubiera v. Calderon*, 570 F.3d 443, 460 (1st Cir. 2009); *see also Tracey*, 2018 WL 5114167, at *4. Putative class members need not share identical claims to satisfy typicality. *Garcia v. E.J. Amusements of N.H., Inc.*, 98 F. Supp. 3d 277, 289 (D. Mass. 2015); *see also In re Relafen Antitrust Litig.*, 231 F.R.D. 52, 69 (D. Mass. 2005) ("For purposes of demonstrating typicality, '[a] sufficient nexus is established if the claims or defenses of the class and the class representative arise from the same event or pattern or practice and are based on the same legal theory.'") (quoting *In re Terazosin Hydrochloride Antitrust Litig.*, 220 F.R.D. 672, 686 (S.D. Fla. 2004)).

The district court in *Tracey* found typicality satisfied because the plaintiffs asserted claims on behalf of their university plan, and the claims all "relate[d] to defendants' alleged imprudent management of the Plan." *Tracey*, 2018 WL 5114167, at *4-5. Here, as there, Plaintiffs are asserting claims on behalf of their Plans, so the evidence of breach will be the same

9

for all members of each subclass, and the claims all rely on the same legal theories. *See id.*; *see also Sacerdote v. New York Univ.*, No. 16-CV-6284 (KBF), 2018 WL 840364, at *3 (S.D.N.Y. Feb. 13, 2018).

Even if the named plaintiffs and class members were impacted to different degrees (based, for example, on holding different investment or having more or less money invested in the Plans), this does not change this result. *Tracey*, 2018 WL 5114167, at *4 ("Several other district courts have found that differences in damages is of 'little consequence to the typicality determination when the common issue of liability is shared.'") (quoting *In re Pharm. Indus. Average Wholesale Price Litig.*, 230 F.R.D. 61, 78 (D. Mass. 2005)); *see also In re Northrop Grumman Corp. ERISA Litig.*, No. CV 06-06213 MMM JCX, 2011 WL 3505264, at *11 (C.D. Cal. Mar. 29, 2011) ("The fact that each class member's recovery may differ due to his or her unique investment portfolio is insufficient to defeat class certification in this matter.").

### 4. Plaintiffs Have No Conflicts With The Class and Their Counsel Are Experienced in Class Litigation (Adequacy).

Rule 23(a)'s final element mandates that the "representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Two factors must be satisfied to fulfill this prerequisite: "First, there must be an absence of potential conflict between the named plaintiff and the potential class members, and, second, the counsel chosen by the class representative must be "qualified, experienced, and able to vigorously conduct the proposed litigation.'" *Glass Dimensions, Inc.*, 285 F.R.D. at 179 (quoting *Adair v. Sorenson*, 134 F.R.D. 13, 18 (D. Mass. 1991)).

Plaintiffs have no actual or potential conflicts with any members of the subclasses. Their pursuit of this claim will advance the interests of every class member, because all have been harmed by Defendants' fiduciary breaches. Both Plaintiffs have pursued this case diligently on

behalf of their fellow plan participants. Both have responded to written discovery. Plaintiff Sellers has sat for a deposition, while Plaintiff Cooper is scheduled to be deposed later this month. With respect to adequacy of representation, Plaintiffs' counsel are well-qualified and experienced in ERISA and class action litigation. (Churchill Aff. [6]; Vazquez Aff. [7]).

### 5. Plaintiffs' Claims Are Paradigmatic Examples of Claims Appropriate for Certification Under Rule 23(b)(1)(B).

Rule 23(b)(1)(B) requires a showing that prosecuting separate actions by or against individual class members would create a risk of "adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests." Fed. R. Civ. P. 23(b)(1)(B). Courts have recognized that ERISA fiduciary breach claims like Plaintiffs' are "paradigmatic examples" of claims appropriate for certification under subsection (b)(1)(B). *See supra* at 1; *Tracey*, 2018 WL 5114167, at *6; *see also In re Schering Plough Corp. ERISA Litig.*, 589 F.3d 585, 604 (3d Cir. 2009). The Advisory Committee Notes to Rule 23 itself single out cases charging "a breach of trust by an indenture trustee or other fiduciary similarly affecting the members of a large class of security holders or other beneficiaries" as examples of cases appropriate under Rule 23(b)(1)(B) in discussing the 1966 amendments to the rule. *See also Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 834 (1999) (highlighting this example of a case that raises the risk of impairment under Rule 23(b)(1)(B)).

Here, adjudicating Plaintiffs' claims, who are proceeding on behalf of the Plans, will involve determinations that implicate interests of all members of the subclasses. The questions include whether Defendants breached their duties, what remedies the Plans are entitled to, and what injunctive relief is appropriate to ensure the Plans are protected in the future. *See also supra*

11

at 8. Each implicates all participants' rights, and Rule 23(b)(1)(B) justifies protecting those rights by granting certification.

## Conclusion

For these reasons, Plaintiffs respectfully requests that this Court:

(1) Certify a class of all persons, except Defendants and their immediate family members, who were participants in, or beneficiaries of the Plans, at any time between June 10, 2016 through the date of judgment, divided into the four subclasses as follows: (i) on behalf of Plan I, all participants of Plan I, except Defendants and their immediate family members, between June 10, 2016 through the date of judgment as to all claims alleging excessive recordkeeping expenses; (ii) on behalf of Plan I, all participants of Plan I except Defendants and their immediate family members, between June 10, 2016 through the date of judgment as to all claims alleging imprudent investment decisions; (iii) on behalf of Plan II, all participants of Plan II, except Defendants and their immediate family members, between June 10, 2016 through the date of judgment as to all claims alleging excessive recordkeeping expenses; (iv) on behalf of Plan II, all participants of Plan II except Defendants and their immediate family members, between June 10, 2016 through the date of judgment as to all claims alleging imprudent investment decisions.

(2) Appoint Plaintiffs Connie Sellers and Sean Cooper as class representatives for all four proposed subclasses;

(3) Appoint Fair Work, P.C. as class counsel for all four subclasses; and

(4) Make such other orders as are just and necessary to protect the interests of the class.

        Respectfully submitted,

        CONNIE SELLERS and SEAN COOPER, individually and as the representatives of a class of similarly situated persons and on behalf of The Boston College 401(k) Retirement Plan I and The Boston College 401(k) Retirement Plan II,

        /s/ *Osvaldo Vazquez*
Stephen Churchill, BBO #564158
Osvaldo Vazquez, *admitted pro hac vice*
FAIR WORK, P.C.
192 South Street, Suite 450
Boston, MA 02111
Tel.   (617) 607-3260
Fax.   (617) 488-2261
steve@fairworklaw.com
oz@fairworklaw.com

Dated: April 5, 2023

13

## **CERTIFICATE OF SERVICE**

    I certify that on this date I served a copy of the foregoing document, via electronic mail, on counsel for the Defendants.


Dated: April 5, 2023             /s/ *Osvaldo Vazquez*
                                          Osvaldo Vazquez