# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

CONNIE SELLERS AND SEAN COOPER, INDIVIDUALLY AND AS THE REPRESENTATIVES OF A CLASS OF SIMILARLY SITUATED PERSONS, AND ON BEHALF OF THE BOSTON COLLEGE 401(K) RETIREMENT PLAN I AND THE BOSTON COLLEGE 401(K) RETIREMENT PLAN II,

      Plaintiffs,

V.

TRUSTEES OF BOSTON COLLEGE, PLAN INVESTMENT COMMITTEE, and JOHN and JANE DOES 1-10,

      Defendants.

Civil Action No.: 22-cv-10912-WGY

## UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

1

# Table of Contents

Background ............................................................................................................3

Terms of Proposed Settlement .............................................................................5

Argument ..............................................................................................................6

   1. The settlement amount is fair, reasonable, and adequate. ...................................7

   2. The proposed payment to the named plaintiffs are fair and reasonable. .............10

   3. The proposed attorneys' fees and costs are fair and reasonable. ........................12

   4. The proposed notice satisfies Fed. R. Civ. P. 23 .................................................14

Conclusion ...........................................................................................................15

Exhibit 1 (Settlement Agreement)

Exhibit 2 (Proposed Class Notice)

Exhibit 3 (Proposed Order)

Pursuant to Fed. R. Civ. P. 23, Plaintiffs Connie Sellers and Sean Cooper, individually and in their representative capacities on behalf of the certified Subclasses and the Boston College 401(k) Plans (the "Plans"), request preliminary approval of a proposed settlement that resolves the above-captioned class action lawsuit. A copy of the settlement agreement ("Agreement") is attached as Exhibit 1. The Plaintiffs also seek approval of a proposed notice to be sent to class members ("Class Notice"), a copy of which is attached as Exhibit 2. A proposed order is attached as Exhibit 3.

## Background

On June 10, 2022, the Plaintiffs commenced this Action, challenging the Defendants' exercise of fiduciary duties as to two retirement plans, The Boston College 401(k) Plan I ("Plan I") and The Boston College 401(k) Plan II ("Plan II"). The case presents two principal claims. One claim challenges the amount of fees charged by TIAA (the Plan I recordkeeper) and Fidelity Investments (the Plan II recordkeeper) for providing recordkeeping services for the Plans ("Recordkeeping Fees Claim"). The other claim challenges the selection of investments made available by the Plans ("Challenged Investment Claim"). More specifically, as to the Challenged Investment Claim, the Plaintiffs ultimately focused on two investment options offered in Plan I, the CREF Stock Account and the TIAA Real Estate Account.

On May 19, 2023, the Court issued an order (ECF No. 46) granting the Named Plaintiffs' Assented-To Motion for Class Certification, which sought certification of four subclasses:

(i) on behalf of Plan I, all participants of Plan I, except Defendants and their immediate family members, between June 10, 2016 through the date of judgment as to all claims alleging excessive recordkeeping expenses; (ii) on behalf of Plan I, all participants of Plan I except Defendants and their immediate family members, between June 10, 2016 through the date of judgment as to all claims alleging imprudent investment decisions; (iii) on behalf of Plan II, all participants of Plan II, except Defendants and their immediate family members, between June 10, 2016 through the date of judgment as to all claims alleging excessive recordkeeping expenses; (iv) on behalf of Plan II, all

participants of Plan II except Defendants and their immediate family members, between June 10, 2016 through the date of judgment as to all claims alleging imprudent investment decisions.

The Parties stipulated that Ms. Sellers serve as class representative for all four proposed subclasses and that Mr. Cooper serve as a class representative for Subclasses (i), (ii), and (iii).

On April 11, 2024, following extensive briefing and a hearing, the Court issued a Memorandum of Decision on Defendants' Motion for Summary Judgment (ECF No. 107), in which the Court (a) granted in part and denied in part the Defendants' motion as it related to the Recordkeeping Fees Claim, limiting the scope of that claim to the period following a November 2018 request for proposal that identified potentially lower-cost recordkeeping options if the Plans were consolidated with a single recordkeeper, (b) granted in part and denied in part the Defendants' motion as it related to the CREF Stock Account portion of the Challenged Investment Claim, limiting the scope of that claim to the period following the December 2020 decision to place that fund on a "watch list," as recommended by the Defendants' consultant, (c) granted the Defendants' motion as it related to the TIAA Real Estate Account portion of the Challenged Investment Claim, (d) granted the Defendants' motion as to claims that they violated plan documents, and (e) granted the Defendants' motion as to claims that the Trustees failed prudently to monitor its fiduciaries, all as more specifically set forth in the Court's Memorandum of Decision. Following the Court's summary judgment decision, the case was placed on the Court's running trial list for July 2024.

On May 17, 2024, the Defendants filed a Motion to Decertify the Plan I Investment Subclass and to Dismiss the Challenged Investment Claim for Lack of Standing (ECF No. 110), which was opposed by the Plaintiffs but which remains pending in the Court. That motion was premised on the fact that neither Ms. Sellers nor Mr. Cooper invested in the CREF Stock

Account. On May 21, 2024, the Defendants filed a Motion to Decertify the Plan I and Plan II Recordkeeping Subclasses (ECF No. 113), which was opposed by the Plaintiffs but which also remains pending in the Court. That motion was premised on the Defendants' allegation that replacing TIAA as a recordkeeper would have increased total recordkeeping fees.

On June 18, 2024, following extensive arms-length negotiations that resulted in an agreement as to material terms of a proposed settlement, the parties filed a Notice of Settlement (ECF No. 130).

### Terms of Proposed Settlement

The Agreement provides that the remaining Challenged Investment Claim – *i.e.*, the claim challenging the Defendants' actions as to the CREF Stock Account after it was placed on "watch" status in December 2020 – be dismissed *without prejudice*, thereby preserving the right of any party (other than the two named plaintiffs) to pursue that claim. The Agreement further provides that any and all other claims alleged in the above-captioned action be settled by a payment of $330,000 ("Gross Settlement Amount"), thereby avoiding the need for a trial.

The Agreement proposes that the net settlement proceeds, after fees and costs, be allocated to class members in proportion to the assets they had in the Plans between January 1, 2019 and June 30, 2024, which corresponds with the portion of the Recordkeeping Fees Claim that survived summary judgment. That allocation is equitable, because recordkeeping fees were charged as a percent of a participant's assets. In terms of fees and costs, the Agreement proposes that one-third of the Gross Settlement Amount be allocated for attorneys' fees and costs, that an additional amount be allocated for administrative costs for an independent fiduciary[1] (in an

---

[1] The independent fiduciary will be charged with determining whether to approve and authorize the settlement on behalf of the Plan, pursuant to Prohibited Transaction Class Exemption 2003-39, "Release of Claims and Extensions of Credit in Connection with Litigation," issued

amount expected to be no greater than $15,000) and for a third-party settlement administrator (in an amount expected to be no greater than $25,000), and that the two named plaintiffs receive modest service awards of $2,500 each.

The Agreement also provides that the Defendants will continue to retain the services of a consultant to advise its Investment Committee – including, without limitation, as to recordkeeping benchmarking and investment fund performance and selection – for a period of five years. Further, the Agreement provides that the Defendants will require any recordkeeper for Plan I or Plan II to provide any survey data that the recordkeepers obtain or collect from participants, including, without limitation, any data as to participant satisfaction, preferences, complaints, or experiences with the recordkeepers. These provisions will provide relevant information to Committee members to aid them in monitoring the Plans' recordkeepers and investment options.

Additional details regarding the proposed settlement are set forth in the Agreement itself, which is attached as Ex. 1.

## Argument

A class action may not be settled or compromised without the approval of the Court. Fed. R. Civ. P. 23(e). At the preliminary approval stage, a court should determine whether there is cause "to submit the [settlement] to class members" and hold a later hearing "as to its fairness." *In re Traffic Executive Ass'n,* 627 F.2d 631, 634 (2d Cir. 1980). After the notice period, the Court can hold a further hearing to consider final approval in light of the class members' response to the notice and all other relevant information.

---

December 31, 2003, by the United States Department of Labor, 68 Fed. Reg. 75,632, as amended.

1.    **The proposed settlement is fair, reasonable, and adequate.**

It is well established, of course, that settlements are favored. *Newberg and Rubenstein on Class Actions*, §13.44 (6th ed.) ("The law favors settlement, particularly in class actions and other complex cases where substantial resources can be conserved by avoiding lengthy trials and appeals."). *See also E.E.O.C. v. Astra U.S.A., Inc.*, 94 F.3d 73 8, 744 (1st Cir. 1996) ("We do not doubt that public policy strongly favors encouraging voluntary settlement" of class action claims.).

The advantages to the parties and the courts are particularly apparent in the compromise of class actions, which are "often complex, drawn out proceedings demanding a large share of finite judicial resources." *Mayfield v. Barr*, 985 F.2d 1090, 1092 (D.C. Cir. 1993). *See also Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977) ("In the class action context in particular, 'there is an overriding public interest in favor of settlement,' [which] minimizes the litigation expenses of both parties and also reduces the strain such litigation imposes upon already scarce judicial resources").

Before granting approval of a proposed class action settlement, the Court must find that the settlement is fair, reasonable, and adequate, guided by four factors: (1) the class representatives and class counsel have adequately represented the class, (2) the proposal was negotiated at arm's length, (3) the relief provided for the class is adequate, and (4) the proposal treats class members equitably relative to each other. Fed. R. Civ. P. 23(e)(2). All of these factors support approval of the proposed settlement.

First, the class representatives and class counsel have adequately and aggressively represented the class. Ms. Sellers, Mr. Cooper, and their counsel diligently litigated the claims in this case. They faced and overcame an initial motion to dismiss. They sought and obtained

voluminous documents and records from the Defendants, as well as from TIAA, Fidelity, and Fiducient Advisors ("Fiducient"). They deposed every member of the Defendants' Investment Committee, as well as the Defendants' principal consultant at Fiducient. They successfully obtained class certification. They retained and paid for two experts, one as to the Recordkeeping Fees Claim and one as to the Challenged Investment Claim. They marshalled extensive evidence and established trial-worthy issues as to both the Recordkeeping Fees Claim and the Challenged Investment Claim as it pertained to the CREF Stock Account when confronted with a comprehensive motion for summary judgment.

Second, the Agreement was negotiated at arm's length, following extensive discovery. *See In re Pharm. Indus. Average Wholesale Price Litig.*, 588 F.3d 24, 32-33 (1st Cir. 2009) ("If the parties negotiated at arm's length and conducted sufficient discovery, the district court must presume the settlement is reasonable."). As noted above, the parties' settlement negotiations followed a period of substantial discovery, including numerous depositions and the production of voluminous records and data. The parties strongly disagreed as to numerous factual and legal issues, as made clear by the course of litigation in this case and by the competing arguments presented in the motion to dismiss, the motion for summary judgment, and the Defendants' two recent motions to dismiss and decertify.

Third, the proposed relief is adequate. As to the Challenged Investment Claim concerning the CREF Stock Account, the issue that remained for trial was subject to a standing challenge and a challenge as to continued class certification. Based on applicable law, the Plaintiffs disagreed that they lacked standing or could not serve as class representatives for the remaining issue in the Challenged Investment Claim which concerned only the CREF Stock Account, but they concluded that the better course, given the totality of circumstances, was to preserve that

issue for potential litigation by a participant who *was* invested in the CREF Stock Account during the relevant period of time and who desires to pursue that claim. As a result, while they are releasing that claim individually, the claim is otherwise being dismissed without prejudice to the extent it challenged the CREF Stock Account. Because the CREF Stock Account portion of their Challenged Investment claim is being dismissed without prejudice, the Agreement does not provide any compensation for it.

As to the other portion of Plaintiffs' claim that remains following summary judgment (the Recordkeeping Fees Claim), there are various measures of potential damages, assuming the Plaintiffs could establish liability. The Defendants contend that there was no breach or loss at all, arguing that if they had replaced TIAA with another recordkeeper, the overall recordkeeping fees would have been higher, as detailed in the Memorandum of Law in Support of Defendants' Motion to Decertify the Plan I and Plan II Recordkeeping Subclasses (ECF No. 114). The Plaintiffs argued in response that there were alternative courses of action the Defendants could have taken to lower recordkeeping costs for participants in both plans:

| | 2018 | 2019 | 2020 | 2021 | 2022 | 2023 |
|---|---|---|---|---|---|---|
| **Plan I Fee/Participant** | $57.89 | $51.00 | $51.00 | $49.26 | $44.00 | $43.25 |
| **Plan II Fee/Participant** | $75.85 | $53.35 | $58.92 | $66.03 | $50.10 | $47.64 |
| **AVERAGE** | $66.87 | $52.18 | $54.96 | $57.65 | $47.05 | $45.45 |
| | | | | | | |
| **Alternative 1**: Fidelity Only | $31.00 | $31.00 | $31.00 | $31.00 | $31.00 | $31.00 |
| **Alternative 2**: TIAA Only | $42.00 | $42.00 | $42.00 | $42.00 | $42.00 | $42.00 |
| **Alternative 3**: TIAA + Empower (average) | $41.25 | $41.25 | $41.25 | $41.25 | $41.25 | $41.25 |

(*See* ECF No. 121, p.10). Based on the Plaintiffs' analysis, those alternatives resulted in a loss that ranged from about $340,000 to about $970,000 through mid-2024, again assuming the Plaintiffs' established a breach of fiduciary duty. As a result, the range of possible damages *if the*

*Defendants were found liable* was $0 to about $970,000. As to the Plaintiffs' estimates, the mid-point of their range is about $655,000. Given the totality of the circumstances in this case, including an assessment of all evidence and the Court's stated position, a settlement discount of 50 percent (that is, the proposed settlement amount of $330,000 divided by the potential loss mid-point of $655,000) is within the range of reasonableness.

Fourth, the proposed settlement will treat class members equitably relative to each other. Allocating settlement funds to class members is relatively straightforward with respect to the Recordkeeping Fees Claim, because recordkeeping fees were calculated as a percent of a participant's assets. As a result, the agreement proposes to allocate net proceeds based on each class member's plan balances during the relevant class period.

For all of these reasons, the Agreement proposes a resolution that is fair, reasonable, and adequate in light of the relevant factors.

**2.      The proposed payments to the named plaintiffs are fair and reasonable.**

The Court need not make a final ruling on the proposed payment to Ms. Sellers and Mr. Cooper until the time of final approval, when it can assess any objections, but the proposed payment is intended to compensate them for the effort and risk associated with their role in serving as named plaintiffs, as well as their execution of a broader release. Notably, both named plaintiffs were required to respond to written discovery and both were deposed.

Courts have widely recognized that incentive awards serve an important function in promoting enforcement of state and federal law by private individuals, while encouraging class action settlements. *See In re Relafen Antitrust Litig.*, 231 F.R.D. 52, 82 (D. Mass. 2005) ("Incentive awards are recognized as serving an important function in promoting class action settlements"), *quoting In re Lupron*, 228 F.R.D. 75, 98 (D. Mass. 2005); *In re Compact Disc*

*Min. Adver. Price Antitrust Litig.*, 292 F. Supp. 2d 184, 189 (D. Me. 2003) ("Because a named plaintiff is an essential ingredient of any class action, an incentive award can be appropriate to encourage or induce an individual to participate in the suit"). As one court noted, "[s]ervice awards [*i.e.*, incentive payments] are common in class action cases and serve to compensate plaintiffs for the time and effort expended in assisting the prosecution of the litigation, the risks incurred by becoming and continuing as a litigant, and any other burdens sustained by the plaintiffs. . . It is important to compensate plaintiffs for the time they spend and the risks they take." *Beckman*, 293 F.R.D. at 483 (citations omitted).

Incentive awards serve a particularly important role in employment-related class actions. Named plaintiffs may risk their livelihood to bring a case forward on behalf of their fellow co-workers. Courts have recognized the important role of class actions in the employment context precisely because of this fear of potential retaliation. *See, e.g., Perez v. Safety-Kleen Systems, Inc.*, 253 F.R.D. 508, 520 (N.D. Cal. 2008) (concluding class action was superior because "some class members may fear reprisal"); *Guzman v. VLM, Inc.*, 2008 WL 597186, at *8 (E.D.N.Y. 2008) (noting "valid concern" that "many employees will be reluctant to participate in the action due to fears of retaliation"). This same consideration makes incentive awards appropriate in employment class action settlements, as well: "[Incentive] awards are particularly appropriate in the employment context. In employment litigation, the plaintiff is often a former or current employee of the defendant, and thus, by lending his name to the litigation, he has, for the benefit of the class as a whole, undertaken the risk of adverse actions by the employer or co-workers." *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 187 (W.D.N.Y. 2005).

**3.     The proposed attorneys' fees and costs are fair and reasonable.**

With respect to approving the proposed award for attorneys' fees and costs, the Court need not make a final ruling until the time of final approval, when it can assess any objections. As set forth in the proposed Class Notice, Class Counsel will make available on the settlement website, within 30 days of issuance of the Class Notice, a copy of their request for an award of fees and costs. As a result, all members of the class will have an opportunity to review that request before the deadline for objections.

The amount of requested fees and costs is facially reasonable relative to the amount of time and expenses incurred by Class Counsel. As will be detailed in their request for fees and costs, Class Counsel have incurred fees far exceeding the proposed award. This case required extensive legal effort, including the initial investigation, opposing a motion to dismiss, engaging in extensive discovery, opposing a voluminous motion for summary judgment, and undertaking substantial trial preparations. In addition to the extensive time devoted to this case, Class Counsel advanced over $100,000 in expenses, including expenses for filing fees, deposition transcripts, and experts. As a result, an award of fees and costs in the amount of $110,000, which is far below Class Counsel's actual fees and costs, is reasonable.

Courts frequently favor an award of fees from a common fund, as called for by the proposed settlement in this case. As the Supreme Court has explained:

> [T]his Court has recognized consistently that a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorneys' fee from the fund as a whole. . . . Jurisdiction over the fund involved in the litigation allows a Court to prevent . . . inequity by assessing attorney's fees against the entire fund, thus spreading fees proportionately among those benefited by the suit.

*Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980) (citations omitted).

When awarding fees from a common fund, the "percentage of the fund" method is preferred over the lodestar method. As the First Circuit observed, the percentage method is less burdensome to administer than the lodestar method. *In re Thirteen Appeals*, 56 F.3d 295, 307 (1st Cir. 1995). The court also endorsed the percentage method because it is result-oriented, and therefore promotes a more efficient use of attorney time – a loadstar method may give attorneys an incentive to spend as many hours as possible on the litigation and may discourage early settlements. *Id.*

An award of one-third of the fund for fees and costs is consistent with the vital role that contingency arrangements play in making legal counsel available to individuals who cannot afford hourly fees. Unlike traditional firms that receive hourly fees on a monthly basis, employment counsel who take cases on contingency often spend years litigating cases (typically, as in this case, while incurring significant out-of-pocket expenses for experts, transcripts, travel, etc.), without receiving any ongoing payment for their work. Sometimes fees and expenses are recovered; other times, despite hundreds of hours of work, nothing is recovered. This type of practice is viable only if attorneys, having received nothing for their work on some cases, receive more in other cases than they would if they charged hourly fees. Courts have long recognized this reality. *See, e.g., Hensley v. Eckerhart*, 461 U.S. 424, 448 (1983) (noting that "[a]ttorneys who take cases on contingency, thus deferring payment of their fees until the case has ended and taking upon themselves the risk that they will receive no payment at all, generally receive far more in winning cases than they would if they charged an hourly rate"); *In re Union Carbide Corp. Consumer Products Business Securities Litigation*, 724 F. Supp. 160, 168 (S.D.N.Y. 1989) ("Contingent fee arrangements implicitly recognize the risk factor in litigation and that the winning cases must help pay for the losing ones if a lawyer who represents impecunious

plaintiffs, or those plaintiffs not so fully committed as to put their own money where their mouth is, will remain solvent and available to serve the public interest."). By permitting clients to obtain attorneys without having to pay hourly fees, this system provides critical access to the courts for people who otherwise would not be able to find competent counsel to represent them.

4.      **The proposed notice satisfies Fed. R. Civ. P. 23.**

The proposed Class Notice was drafted to comply with the relevant requirements of Fed. R. Civ. P. 23(e)(1)(B), which requires notices to class members who will be bound by the settlement. It also includes the information identified in Rule 23(c)(2)(B), about, among other things, the nature of the action; the definition of the class certified; the class claims, issues, or defenses; and the right to object to the proposed settlement. Because the subclasses here were certified under Rule 23(b)(1), there is no right to request exclusion in this case, so those provisions from Fed. R. Civ. P. 23(c)(2)(B) are not required, yet they are provided nonethless. More generally, Class Counsel have attempted to ensure that class members fully understand the background and context of the proposed settlement.

If approved, the Class Notice will be sent by first-class mail (and, where possible, by electronic means) to the last known addresses of all members of the subclasses. To the extent any mailings are returned as undeliverable, the settlement administrator will use appropriate databases to skip-trace outdated addresses and will promptly resend the notices and claim forms to those updated addresses. There will also be a settlement website, at which members of the subclasses can obtain information relevant to the case, including a copy of the notice and Class Counsel's request for fees and costs.

## Conclusion

For these reasons, Ms. Sellers and Mr. Cooper respectfully request that the Court preliminarily approve the proposed class settlement and approve issuance of the Class Notice, all as set forth in the proposed order attached as Ex. 3.

Respectfully submitted,

CONNIE SELLERS and SEAN COOPER, individually and as the representatives of a class of similarly situated persons and on behalf of The Boston College 401(k) Retirement Plan I and The Boston College 401(k) Retirement Plan II,

/s/ *Stephen Churchill*
Stephen Churchill, BBO #564158
Osvaldo Vazquez, *admitted pro hac vice*
FAIR WORK, P.C.
192 South Street, Suite 450
Boston, MA 02111
Tel.     (617) 607-3260
Fax.     (617) 488-2261
steve@fairworklaw.com
oz@fairworklaw.com

Dated: September 3, 2024

## CERTIFICATE OF SERVICE

This will certify that on this date I served a copy of this document, by ECF, on counsel for the Defendants.

Dated:  September 3, 2024

/s/ *Stephen Churchill*
Stephen Churchill