UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CONNIE SELLERS AND SEAN COOPER, INDIVIDUALLY AND AS THE REPRESENTATIVES OF A CLASS OF SIMILARLY SITUATED PERSONS, AND ON BEHALF OF THE BOSTON COLLEGE 401(K) RETIREMENT PLAN I AND THE BOSTON COLLEGE 401(K) RETIREMENT PLAN II,<br><br>    Plaintiffs,<br><br>V.<br><br>TRUSTEES OF BOSTON COLLEGE, PLAN INVESTMENT COMMITTEE, and JOHN and JANE DOES 1-10,<br><br>    Defendants. | Civil Action No.: 22-cv-10912-WGY |

**UNOPPOSED MOTION FOR FINAL APPROVAL OF<br>CLASS ACTION SETTLEMENT**

1

## Table of Contents

Background ..................................................................................................................3

Terms of Proposed Settlement ...................................................................................5

Results of Notice Process & Review by Independent Fiduciary ...............................7

Argument ....................................................................................................................8

    1. The settlement amount is fair, reasonable, and adequate. ....................................9

    2. The proposed payment to the named plaintiffs are fair and reasonable. .............12

    3. The proposed attorneys' fees and costs are fair and reasonable. .........................14

Conclusion ................................................................................................................14

Exhibit 1 (Settlement Agreement)

Exhibit 2 (Proposed Order)

Exhibit 3 (Notice)

Exhibit 4 (Declaration of Settlement Administrator)

Exhibit 5 (Report of Independent Fiduciary)

Pursuant to Fed. R. Civ. P. 23, Plaintiffs Connie Sellers and Sean Cooper, individually and in their representative capacities on behalf of the certified Subclasses and the Boston College 401(k) Plans (the "Plans"), request final approval of a proposed settlement that resolves the above-captioned class action lawsuit. A copy of the settlement agreement ("Agreement") is attached as Exhibit 1. A proposed order is attached as Exhibit 2.

Following the Court's preliminary approval of the settlement (ECF No. 134), Court-approved notices were sent to all members of the proposed settlement class. A copy of the notice package is attached as Exhibit 3. During the notice period, pursuant to the Court's preliminary approval order and as described in the notice package, a copy of Plaintiffs' Request for Award of Attorneys' Fees and Costs was posted on the settlement website. That motion is being filed together with this motion. No class members objected to the proposed settlement or the proposed award of attorneys' fees and costs.

**Background**

On June 10, 2022, the Plaintiffs commenced this Action, challenging the Defendants' exercise of fiduciary duties as to two retirement plans, The Boston College 401(k) Plan I ("Plan I") and The Boston College 401(k) Plan II ("Plan II"). The case presents two principal claims. One claim challenges the amount of fees charged by TIAA (the Plan I recordkeeper) and Fidelity Investments (the Plan II recordkeeper) for providing recordkeeping services for the Plans ("Recordkeeping Fees Claim"). The other claim challenges the selection of investments made available by the Plans ("Challenged Investment Claim"). More specifically, as to the Challenged Investment Claim, the Plaintiffs ultimately focused on two investment options offered in Plan I, the CREF Stock Account and the TIAA Real Estate Account.

On May 19, 2023, the Court issued an order (ECF No. 46) granting the Named Plaintiffs' Assented-To Motion for Class Certification, which sought certification of four subclasses:

> (i) on behalf of Plan I, all participants of Plan I, except Defendants and their immediate family members, between June 10, 2016 through the date of judgment as to all claims alleging excessive recordkeeping expenses; (ii) on behalf of Plan I, all participants of Plan I except Defendants and their immediate family members, between June 10, 2016 through the date of judgment as to all claims alleging imprudent investment decisions; (iii) on behalf of Plan II, all participants of Plan II, except Defendants and their immediate family members, between June 10, 2016 through the date of judgment as to all claims alleging excessive recordkeeping expenses; (iv) on behalf of Plan II, all participants of Plan II except Defendants and their immediate family members, between June 10, 2016 through the date of judgment as to all claims alleging imprudent investment decisions.

The Parties stipulated that Ms. Sellers serve as class representative for all four proposed subclasses and that Mr. Cooper serve as a class representative for Subclasses (i), (ii), and (iii).

On April 11, 2024, following extensive briefing and a hearing, the Court issued a Memorandum of Decision on Defendants' Motion for Summary Judgment (ECF No. 107), in which the Court (a) granted in part and denied in part the Defendants' motion as it related to the Recordkeeping Fees Claim, limiting the scope of that claim to the period following a November 2018 request for proposal that identified potentially lower-cost recordkeeping options if the Plans were consolidated with a single recordkeeper, (b) granted in part and denied in part the Defendants' motion as it related to the CREF Stock Account portion of the Challenged Investment Claim, limiting the scope of that claim to the period following the December 2020 decision to place that fund on a "watch list," as recommended by the Defendants' consultant, (c) granted the Defendants' motion as it related to the TIAA Real Estate Account portion of the Challenged Investment Claim, (d) granted the Defendants' motion as to claims that they violated plan documents, and (e) granted the Defendants' motion as to claims that the Trustees failed prudently to monitor its fiduciaries, all as more specifically set forth in the Court's Memorandum

of Decision. Following the Court's summary judgment decision, the case was placed on the Court's running trial list for July 2024.

On May 17, 2024, the Defendants filed a Motion to Decertify the Plan I Investment Subclass and to Dismiss the Challenged Investment Claim for Lack of Standing (ECF No. 110), which was opposed by the Plaintiffs but which remained pending in the Court at the time of settlement. That motion was premised on the fact that neither Ms. Sellers nor Mr. Cooper invested in the CREF Stock Account. On May 21, 2024, the Defendants filed a Motion to Decertify the Plan I and Plan II Recordkeeping Subclasses (ECF No. 113), which was opposed by the Plaintiffs but which also remained pending in the Court at the time of settlement. That motion was premised on the Defendants' allegation that replacing TIAA as a recordkeeper would have increased total recordkeeping fees.

On June 18, 2024, following extensive arms-length negotiations that resulted in an agreement as to material terms of a proposed settlement, the parties filed a Notice of Settlement (ECF No. 130).  On September 3, 2024, Plaintiffs filed a Consent Motion for Preliminary Approval of the Settlement  (ECF No. 132).  On September 19, 2024 the Court issued an order (ECF No. 134) granting preliminary approval of the Settlement and set a Fairness Hearing for February 11, 2025.  On November 26, 2024, the Court issued an order (ECF No. 135) stating that Defendants' pending motions to decertify Plaintiffs' classes (ECF Nos. 110 and 113) were moot in light of the preliminarily approved settlement, and ordered that the motions should be refiled if the settlement did not receive final approval.

### Terms of Proposed Settlement

The Agreement provides that the remaining Challenged Investment Claim – *i.e.*, the claim challenging the Defendants' actions as to the CREF Stock Account after it was placed on

"watch" status in December 2020 – be dismissed *without prejudice*, thereby preserving the right of any party (other than the two named plaintiffs) to pursue that claim. The Agreement further provides that any and all other claims alleged in the above-captioned action be settled by a payment of $330,000 ("Gross Settlement Amount"), thereby avoiding the need for a trial.

      The Agreement proposes that the net settlement proceeds, after fees and costs, be allocated to class members in proportion to the assets they had in the Plans between January 1, 2019 and June 30, 2024, which corresponds with the portion of the Recordkeeping Fees Claim that survived summary judgment. That allocation is equitable, because recordkeeping fees were charged as a percent of a participant's assets. In terms of fees and costs, the Agreement proposes that one-third of the Gross Settlement Amount be allocated for attorneys' fees and costs, that an additional amount be allocated for administrative costs for an independent fiduciary (in an amount expected to be no greater than $15,000) and for a third-party settlement administrator (in an amount expected to be no greater than $25,000), and that the two named plaintiffs receive modest service awards of $2,500 each.

      The Agreement also provides that the Defendants will continue to retain the services of a consultant to advise its Investment Committee – including, without limitation, as to recordkeeping benchmarking and investment fund performance and selection – for a period of five years. Further, the Agreement provides that the Defendants will require any recordkeeper for Plan I or Plan II to provide any survey data that the recordkeepers obtain or collect from participants, including, without limitation, any data as to participant satisfaction, preferences, complaints, or experiences with the recordkeepers. These provisions will provide relevant information to Committee members to aid them in monitoring the Plans' recordkeepers and investment options.

Additional details regarding the proposed settlement are set forth in the Agreement itself, which is attached as Exhibit 1.

**Results of Notice Process & Review by Independent Fiduciary**

The parties hired Apex Class Action, LLC as the independent professional settlement administrator. (Declaration of Katherine Rovertoni of Apex Class Action, LLC, in Support of Motion for Final Approval of Class Action Settlement ("Rovertoni Decl."), attached as Ex. 4). On October 24, 2024, Apex mailed the Court-approved notice package to the 7,822 members of the certified subclasses. (Id. ¶ 7). Apex received 303 returned notices as undeliverable but was able to identify and send notices to updated addresses for 189 of those returns; 114 notices (about 1% of all notices) were deemed undeliverable. (Id. ¶¶ 8-10).

On November 22, 2024, in accordance with the Court's Order Granting Preliminary Approval of Proposed Class Action Settlement (ECF No. 134 at ¶ 10), Apex posted Plaintiffs' Request for Award of Attorneys' Fees and Costs on the settlement website, https://apexclassaction.com/Sellerscafaexhibits/. Apex did not receive any objections to the proposed settlement or the requested award of attorneys' fees and costs. (Rovertoni Decl. ¶ 11). The proposed settlement does not require any claim forms.

During the notice process, the Plans hired an independent fiduciary, Newport Trust Company, LLC ("Newport Trust") to review the proposed settlement on behalf of the Plans. (Report from Newport Trust Company, LLC to Boston College, dated December 18, 2024 ("Report of Independent Fiduciary"), attached as Ex. 5). The independent fiduciary was charged with determining whether to approve and authorize the settlement on behalf of the Plans, pursuant to Prohibited Transaction Class Exemption 2003-39, "Release of Claims and Extensions of Credit in Connection with Litigation," issued December 31, 2003, by the United

States Department of Labor, 68 Fed. Reg. 75,632, as amended. Newport Trust undertook a diligent investigation, including reviewing relevant court filings and other information, interviewing counsel for the parties, evaluating the strengths and weaknesses of legal and factual positions, reviewing the details of the proposed settlement, reviewing the proposed allocation, and reviewing the proposed award of attorneys' fees. (*Id*. at 2). Based on its investigation, Newport Trust reached the following conclusion:

> Based on its evaluation of the relevant documents and information associated with the class action and the Settlement, and taking into account the fiduciary obligations imposed by ERISA, Newport Trust has concluded, consistent with the requirements of the Class Exemption, that: (i) the Settlement terms, including the scope of the release of claims, the $300,000 Settlement amount and non-monetary relief provided for in the Settlement, and the amount of any attorneys' fee award or any other sums to be paid from the recovery, are reasonable in light of the Plans' likelihood of full recovery, the risks and costs of litigation, and the value of claims foregone; (ii) the terms and conditions of the transaction are no less favorable to the Plans than comparable arms-length terms and conditions that would have been agreed to by unrelated parties under similar circumstances; and (iii) the transaction is not part of an agreement, arrangement, or understanding designed to benefit a party in interest.
>
> As a result, Newport Trust has determined that the Plans should not object to the Settlement or any portion thereof, including but not limited to the requested attorneys' fees and costs, and as such authorizes the Plans' participation in the Settlement.

(Report of Independent Fiduciary, p.3).

**Argument**

A class action may not be settled or compromised without the approval of the Court. Fed. R. Civ. P. 23(e). It is well established, however, that settlements are favored. *Newberg and Rubenstein on Class Actions*, §13.44 (6th ed.) ("The law favors settlement, particularly in class actions and other complex cases where substantial resources can be conserved by avoiding lengthy trials and appeals."). *See also E.E.O.C. v. Astra U.S.A., Inc.*, 94 F.3d 738, 744 (1st Cir. 1996) ("We do not doubt that public policy strongly favors encouraging voluntary settlement" of class action claims.). The advantages to the parties and the courts are particularly apparent in the compromise of class actions, which are "often complex, drawn out proceedings demanding a large share of finite judicial resources." *Mayfield v. Barr*, 985 F.2d 1090, 1092 (D.C. Cir. 1993).

*See also Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977) ("In the class action context in particular, 'there is an overriding public interest in favor of settlement,' [which] minimizes the litigation expenses of both parties and also reduces the strain such litigation imposes upon already scarce judicial resources").

**1.      The proposed settlement is fair, reasonable, and adequate.**

Before granting approval of a proposed class action settlement, the Court must find that the settlement is fair, reasonable, and adequate, guided by four factors: (1) the class representatives and class counsel have adequately represented the class, (2) the proposal was negotiated at arm's length, (3) the relief provided for the class is adequate, and (4) the proposal treats class members equitably relative to each other. Fed. R. Civ. P. 23(e)(2). All of these factors support approval of the proposed settlement.

First, the class representatives and class counsel have adequately and aggressively represented the class. Ms. Sellers, Mr. Cooper, and their counsel diligently litigated the claims in this case. They faced and overcame an initial motion to dismiss. They sought and obtained voluminous documents and records from the Defendants, as well as from TIAA, Fidelity, and Fiducient Advisors ("Fiducient"). They deposed every member of the Defendants' Investment Committee, as well as the Defendants' principal consultant at Fiducient. They successfully obtained class certification. They retained and paid for two experts, one as to the Recordkeeping Fees Claim and one as to the Challenged Investment Claim. They marshalled extensive evidence and established trial-worthy issues as to both the Recordkeeping Fees Claim and the Challenged Investment Claim as it pertained to the CREF Stock Account when confronted with a comprehensive motion for summary judgment.

Second, the Agreement was negotiated at arm's length, following extensive discovery. *See In re Pharm. Indus. Average Wholesale Price Litig.*, 588 F.3d 24, 32-33 (1st Cir. 2009) ("If the parties negotiated at arm's length and conducted sufficient discovery, the district court must presume the settlement is reasonable."). As noted above, the parties' settlement negotiations followed a period of substantial discovery, including numerous depositions and the production of voluminous records and data. The parties strongly disagreed as to numerous factual and legal issues, as made clear by the course of litigation in this case and by the competing arguments presented in the motion to dismiss, the motion for summary judgment, and the Defendants' two recent motions to dismiss and decertify.

Third, the proposed relief is adequate. As to the Challenged Investment Claim concerning the CREF Stock Account, the issue that remained for trial was subject to a standing challenge and a challenge as to continued class certification. Based on applicable law, the Plaintiffs disagreed that they lacked standing or could not serve as class representatives for the remaining issue in the Challenged Investment Claim which concerned only the CREF Stock Account, but they concluded that the better course, given the totality of circumstances, was to preserve that issue for potential litigation by a participant who *was* invested in the CREF Stock Account during the relevant period of time and who desires to pursue that claim. As a result, while they are releasing that claim individually, the claim is otherwise being dismissed without prejudice to the extent it challenged the CREF Stock Account. Because the CREF Stock Account portion of their Challenged Investment claim is being dismissed without prejudice, the Agreement does not provide any compensation for it.

As to the other portion of Plaintiffs' claim that remains following summary judgment (the Recordkeeping Fees Claim), there are various measures of potential damages, assuming the

Plaintiffs could establish liability. The Defendants contend that there was no breach or loss at all, arguing that if they had replaced TIAA with another recordkeeper, the overall recordkeeping fees would have been higher, as detailed in the Memorandum of Law in Support of Defendants' Motion to Decertify the Plan I and Plan II Recordkeeping Subclasses (ECF No. 114). The Plaintiffs argued in response that there were alternative courses of action the Defendants could have taken to lower recordkeeping costs for participants in both plans:

|  | 2018 | 2019 | 2020 | 2021 | 2022 | 2023 |
|---|---|---|---|---|---|---|
| Plan I Fee/Participant | $57.89 | $51.00 | $51.00 | $49.26 | $44.00 | $43.25 |
| Plan II Fee/Participant | $75.85 | $53.35 | $58.92 | $66.03 | $50.10 | $47.64 |
| **AVERAGE** | $66.87 | $52.18 | $54.96 | $57.65 | $47.05 | $45.45 |
|  |  |  |  |  |  |  |
| **Alternative 1**: Fidelity Only | $31.00 | $31.00 | $31.00 | $31.00 | $31.00 | $31.00 |
| **Alternative 2**: TIAA Only | $42.00 | $42.00 | $42.00 | $42.00 | $42.00 | $42.00 |
| **Alternative 3**: TIAA + Empower (average) | $41.25 | $41.25 | $41.25 | $41.25 | $41.25 | $41.25 |

(*See* ECF No. 121, p.10). Based on the Plaintiffs' analysis, those alternatives resulted in a loss that ranged from about $340,000 to about $970,000 through mid-2024, again assuming the Plaintiffs' established a breach of fiduciary duty. As a result, the range of possible damages *if the Defendants were found liable* was $0 to about $970,000. As to the Plaintiffs' estimates, the mid-point of their range is about $655,000. Given the totality of the circumstances in this case, including an assessment of all evidence and the Court's stated position, a settlement discount of 50 percent (that is, the proposed settlement amount of $330,000 divided by the potential loss mid-point of $655,000) is within the range of reasonableness.

Fourth, the proposed settlement will treat class members equitably relative to each other. Allocating settlement funds to class members is relatively straightforward with respect to the Recordkeeping Fees Claim, because recordkeeping fees were calculated as a percent of a

11

participant's assets. As a result, the agreement proposes to allocate net proceeds based on each class member's plan balances during the relevant class period.

In addition to those four factors, the proposed settlement has now been subject to review by all affected parties and an independent fiduciary retained on behalf of the Plans. More specifically, all members of the relevant subclasses and the independent fiduciary have had an opportunity to review the proposed agreement and the proposed allocations as between fees, administrative expenses, service awards, and class funds. There are no objections, and the independent fiduciary affirmatively found that the terms of the proposed settlement are reasonable.

For all of these reasons, the Agreement proposes a resolution that is fair, reasonable, and adequate in light of the relevant factors.

**2.      The proposed payments to the named plaintiffs are fair and reasonable.**

The proposed service awards of $2,500 to each of the two named plaintiffs are modest and have not elicited any objections. Both of the named plaintiffs assisted Class Counsel during the investigation that preceded the filing of this case and during the lengthy litigation of this case. Both were required to respond to discovery requests and to provide deposition testimony.

Courts have widely recognized that incentive awards serve an important function in promoting enforcement of state and federal law by private individuals, while encouraging class action settlements. *See In re Relafen Antitrust Litig.*, 231 F.R.D. 52, 82 (D. Mass. 2005) ("Incentive awards are recognized as serving an important function in promoting class action settlements"), *quoting In re Lupron*, 228 F.R.D. 75, 98 (D. Mass. 2005); *In re Compact Disc Min. Adver. Price Antitrust Litig.*, 292 F. Supp. 2d 184, 189 (D. Me. 2003) ("Because a named plaintiff is an essential ingredient of any class action, an incentive award can be appropriate to

encourage or induce an individual to participate in the suit"). As one court noted, "[s]ervice awards [*i.e.*, incentive payments] are common in class action cases and serve to compensate plaintiffs for the time and effort expended in assisting the prosecution of the litigation, the risks incurred by becoming and continuing as a litigant, and any other burdens sustained by the plaintiffs. . . It is important to compensate plaintiffs for the time they spend and the risks they take." *Beckman*, 293 F.R.D. at 483 (citations omitted).

Incentive awards serve a particularly important role in employment-related class actions. Named plaintiffs may risk their livelihood to bring a case forward on behalf of their fellow co-workers. Courts have recognized the important role of class actions in the employment context precisely because of this fear of potential retaliation. *See, e.g., Perez v. Safety-Kleen Systems, Inc.*, 253 F.R.D. 508, 520 (N.D. Cal. 2008) (concluding class action was superior because "some class members may fear reprisal"); *Guzman v. VLM, Inc.*, 2008 WL 597186, at *8 (E.D.N.Y. 2008) (noting "valid concern" that "many employees will be reluctant to participate in the action due to fears of retaliation"). This same consideration makes incentive awards appropriate in employment class action settlements, as well: "[Incentive] awards are particularly appropriate in the employment context. In employment litigation, the plaintiff is often a former or current employee of the defendant, and thus, by lending his name to the litigation, he has, for the benefit of the class as a whole, undertaken the risk of adverse actions by the employer or co-workers." *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 187 (W.D.N.Y. 2005).

For these reasons, the proposed service awards are fair and reasonable.

**3.     The proposed attorneys' fees and costs are fair and reasonable.**

Class Counsel's request for an award of attorneys' fees and costs is set forth in Plaintiffs' Request for Award of Attorneys' Fees and Costs, filed herewith.

### Conclusion

For these reasons, Ms. Sellers and Mr. Cooper respectfully request that the Court grant final approval of the proposed class settlement, all as set forth in the proposed order attached as Ex. 2.

>                         Respectfully submitted,
>
>                         CONNIE SELLERS and SEAN COOPER,
>                         individually and as the representatives of a class of
>                         similarly situated persons and on behalf of The
>                         Boston College 401(k) Retirement Plan I and The
>                         Boston College 401(k) Retirement Plan II,
>
>                         /s/ *Stephen Churchill*
>                         Stephen Churchill, BBO #564158
>                         Osvaldo Vazquez, *admitted pro hac vice*
>                         FAIR WORK, P.C.
>                         192 South Street, Suite 450
>                         Boston, MA 02111
>                         Tel.   (617) 607-3260
>                         Fax.   (617) 488-2261
>                         steve@fairworklaw.com
>                         oz@fairworklaw.com

Dated: February 4, 2025

## **<u>CERTIFICATE OF SERVICE</u>**

  This will certify that on this date I served a copy of this document, by ECF, on counsel for the Defendants.


Dated:  February 4, 2025       <u>/s/ *Stephen Churchill*</u>
                Stephen Churchill