**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

CONNIE SELLERS AND SEAN COOPER, INDIVIDUALLY AND AS THE REPRESENTATIVES OF A CLASS OF SIMILARLY SITUATED PERSONS, AND ON BEHALF OF THE BOSTON COLLEGE 401(K) RETIREMENT PLAN I AND THE BOSTON COLLEGE 401(K) RETIREMENT PLAN II,

Plaintiffs,

V.

TRUSTEES OF BOSTON COLLEGE, PLAN INVESTMENT COMMITTEE, and JOHN and JANE DOES 1-10,

Defendants.

Civil Action No.: 22-cv-10912-WGY

**PLAINTIFFS' REQUEST FOR AWARD OF ATTORNEYS' FEES AND COSTS**

Pursuant to Fed. R. Civ. P. 23, Plaintiffs Connie Sellers and Sean Cooper, individually and in their representative capacities on behalf of the certified Subclasses and the Boston College 401(k) Plans (the "Plans"), request an award of attorneys' fees and costs in connection with the proposed settlement that resolves the above-captioned class action lawsuit.

**Background**

On June 10, 2022, the Plaintiffs commenced this Action, challenging the Defendants' exercise of fiduciary duties as to two retirement plans, The Boston College 401(k) Plan I ("Plan I") and The Boston College 401(k) Plan II ("Plan II"). The case presents two principal claims. One claim challenges the amount of fees charged by TIAA (the Plan I recordkeeper) and Fidelity Investments (the Plan II recordkeeper) for providing recordkeeping services for the Plans ("Recordkeeping Fees Claim"). The other claim challenges the selection of investments made available by the Plans ("Challenged Investment Claim"). More specifically, as to the Challenged

Investment Claim, the Plaintiffs ultimately focused on two investment options offered in Plan I, the CREF Stock Account and the TIAA Real Estate Account.

On May 19, 2023, the Court issued an order (ECF No. 46) granting the Named Plaintiffs' Assented-To Motion for Class Certification, which sought certification of four subclasses:

> (i) on behalf of Plan I, all participants of Plan I, except Defendants and their immediate family members, between June 10, 2016 through the date of judgment as to all claims alleging excessive recordkeeping expenses; (ii) on behalf of Plan I, all participants of Plan I except Defendants and their immediate family members, between June 10, 2016 through the date of judgment as to all claims alleging imprudent investment decisions; (iii) on behalf of Plan II, all participants of Plan II, except Defendants and their immediate family members, between June 10, 2016 through the date of judgment as to all claims alleging excessive recordkeeping expenses; (iv) on behalf of Plan II, all participants of Plan II except Defendants and their immediate family members, between June 10, 2016 through the date of judgment as to all claims alleging imprudent investment decisions.

The Parties stipulated that Ms. Sellers serve as class representative for all four proposed subclasses and that Mr. Cooper serve as a class representative for Subclasses (i), (ii), and (iii).

On April 11, 2024, following extensive briefing and a hearing, the Court issued a Memorandum of Decision on Defendants' Motion for Summary Judgment (ECF No. 107), in which the Court (a) granted in part and denied in part the Defendants' motion as it related to the Recordkeeping Fees Claim, limiting the scope of that claim to the period following a November 2018 request for proposal that identified potentially lower-cost recordkeeping options if the Plans were consolidated with a single recordkeeper, (b) granted in part and denied in part the Defendants' motion as it related to the CREF Stock Account portion of the Challenged Investment Claim, limiting the scope of that claim to the period following the December 2020 decision to place that fund on a "watch list," as recommended by the Defendants' consultant, (c) granted the Defendants' motion as it related to the TIAA Real Estate Account portion of the Challenged Investment Claim, (d) granted the Defendants' motion as to claims that they violated

plan documents, and (e) granted the Defendants' motion as to claims that the Trustees failed prudently to monitor its fiduciaries, all as more specifically set forth in the Court's Memorandum of Decision. Following the Court's summary judgment decision, the case was placed on the Court's running trial list for July 2024.

On May 17, 2024, the Defendants filed a Motion to Decertify the Plan I Investment Subclass and to Dismiss the Challenged Investment Claim for Lack of Standing (ECF No. 110), which was opposed by the Plaintiffs but which remained pending in the Court at the time of the settlement. That motion was premised on the fact that neither Ms. Sellers nor Mr. Cooper invested in the CREF Stock Account. On May 21, 2024, the Defendants filed a Motion to Decertify the Plan I and Plan II Recordkeeping Subclasses (ECF No. 113), which was opposed by the Plaintiffs but which also remained pending in the Court at the time of the settlement. That motion was premised on the Defendants' allegation that replacing TIAA as a recordkeeper would have increased total recordkeeping fees.

On June 18, 2024, following extensive arms-length negotiations that resulted in an agreement as to material terms of a proposed settlement, the parties filed a Notice of Settlement (ECF No. 130).

**Terms of Proposed Settlement**

The Agreement provides that the remaining Challenged Investment Claim – *i.e.*, the claim challenging the Defendants' actions as to the CREF Stock Account after it was placed on "watch" status in December 2020 – be dismissed *without prejudice*, thereby preserving the right of any party (other than the two named plaintiffs) to pursue that claim. The Agreement further provides that any and all other claims alleged in the above-captioned action be settled by a payment of $330,000 ("Gross Settlement Amount"), thereby avoiding the need for a trial.

The Agreement proposes that the net settlement proceeds, after fees and costs, be allocated to class members in proportion to the assets they had in the Plans between January 1, 2019 and June 30, 2024, which corresponds with the portion of the Recordkeeping Fees Claim that survived summary judgment. That allocation is equitable, because recordkeeping fees were charged as a percent of a participant's assets. In terms of fees and costs, the Agreement proposes that one-third of the Gross Settlement Amount be allocated for attorneys' fees and costs, that an additional amount be allocated for administrative costs for an independent fiduciary[1] (in an amount expected to be no greater than $15,000) and for a third-party settlement administrator (in an amount expected to be no greater than $25,000), and that the two named plaintiffs receive modest service awards of $2,500 each.

The Agreement also provides that the Defendants will continue to retain the services of a consultant to advise its Investment Committee – including, without limitation, as to recordkeeping benchmarking and investment fund performance and selection – for a period of five years. Further, the Agreement provides that the Defendants will require any recordkeeper for Plan I or Plan II to provide any survey data that the recordkeepers obtain or collect from participants, including, without limitation, any data as to participant satisfaction, preferences, complaints, or experiences with the recordkeepers. These provisions will provide relevant information to Committee members to aid them in monitoring the Plans' recordkeepers and investment options.

In the view of class counsel, the monetary amount of the proposed settlement is well within the range of reasonableness. As to the Challenged Investment Claim concerning the

[1] The independent fiduciary will be charged with determining whether to approve and authorize the settlement on behalf of the Plan, pursuant to Prohibited Transaction Class Exemption 2003-39, "Release of Claims and Extensions of Credit in Connection with Litigation," issued December 31, 2003, by the United States Department of Labor, 68 Fed. Reg. 75,632, as amended.

CREF Stock Account, the issue that remained for trial was subject to a standing challenge and a challenge as to continued class certification. Based on applicable law, the Plaintiffs disagreed that they lacked standing or could not serve as class representatives for the remaining issue in the Challenged Investment Claim which concerned only the CREF Stock Account, but they concluded that the better course, given the totality of circumstances, was to preserve that issue for potential litigation by a participant who *was* invested in the CREF Stock Account during the relevant period of time and who desires to pursue that claim. As a result, while they are releasing that claim individually, the claim is otherwise being dismissed without prejudice to the extent it challenged the CREF Stock Account. Because the CREF Stock Account portion of their Challenged Investment claim is being dismissed without prejudice, the Agreement does not provide any compensation for it.

As to the other portion of Plaintiffs' claim that remains following summary judgment (the Recordkeeping Fees Claim), there are various measures of potential damages, assuming the Plaintiffs could establish liability. The Defendants contend that there was no breach or loss at all, arguing that if they had replaced TIAA with another recordkeeper, the overall recordkeeping fees would have been higher, as detailed in the Memorandum of Law in Support of Defendants' Motion to Decertify the Plan I and Plan II Recordkeeping Subclasses (ECF No. 114). The Plaintiffs argued in response that there were alternative courses of action the Defendants could have taken to lower recordkeeping costs for participants in both plans:

| | 2018 | 2019 | 2020 | 2021 | 2022 | 2023 |
|---|---|---|---|---|---|---|
| Plan I Fee/Participant | $57.89 | $51.00 | $51.00 | $49.26 | $44.00 | $43.25 |
| Plan II Fee/Participant | $75.85 | $53.35 | $58.92 | $66.03 | $50.10 | $47.64 |
| **AVERAGE** | **$66.87** | **$52.18** | **$54.96** | **$57.65** | **$47.05** | **$45.45** |
| | | | | | | |
| **Alternative 1:** Fidelity Only | **$31.00** | **$31.00** | **$31.00** | **$31.00** | **$31.00** | **$31.00** |
| **Alternative 2:** TIAA Only | **$42.00** | **$42.00** | **$42.00** | **$42.00** | **$42.00** | **$42.00** |
| **Alternative 3:** TIAA + Empower (average) | **$41.25** | **$41.25** | **$41.25** | **$41.25** | **$41.25** | **$41.25** |

(*See* ECF No. 121, p.10). Based on the Plaintiffs' analysis, those alternatives resulted in a loss that ranged from about $340,000 to about $970,000 through mid-2024, again assuming the Plaintiffs' established a breach of fiduciary duty. As a result, the range of possible damages *if the Defendants were found liable* was $0 to about $970,000. As to the Plaintiffs' estimates, the mid-point of their range is about $655,000. Given the totality of the circumstances in this case, including an assessment of all evidence and the Court's stated position, a settlement discount of 50 percent (that is, the proposed settlement amount of $330,000 divided by the potential loss mid-point of $655,000) is within the range of reasonableness.

**Argument**

Courts frequently favor an award of fees from a common fund, as called for by the proposed settlement in this case. As the Supreme Court has explained:

> [T]his Court has recognized consistently that a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorneys' fee from the fund as a whole. . . . Jurisdiction over the fund involved in the litigation allows a Court to prevent . . . inequity by assessing attorney's fees against the entire fund, thus spreading fees proportionately among those benefited by the suit.

*Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980) (citations omitted).

When awarding fees from a common fund, the "percentage of the fund" method has substantial advantages over the lodestar method. As the First Circuit observed, the percentage

method is less burdensome to administer than the lodestar method. *In re Thirteen Appeals*, 56 F.3d 295, 307 (1st Cir. 1995). The court also endorsed the percentage method because it is result-oriented, and therefore promotes a more efficient use of attorney time – a loadstar method may give attorneys an incentive to spend as many hours as possible on the litigation and may discourage early settlements. *Id.* When using the percentage method, courts routinely approve fee awards that represent one-third of the settlement fund.[2]

An award of one-third of the fund is consistent with the vital role that contingency arrangements play in making legal counsel available to employees who cannot afford hourly fees. Unlike traditional firms that receive hourly fees on a monthly basis, employment counsel who take cases on contingency often spend years litigating cases (typically while incurring significant out-of-pocket expenses for experts, transcripts, travel, etc.), without receiving any ongoing payment for their work. Sometimes fees and expenses are recovered; other times, despite hundreds of hours of work, nothing is recovered. Indeed, class counsel in this case are litigating other cases on a contingency basis in which they have well over $100,000 in attorney time and have spent well over $100,000 in expert fees or other costs while facing a significant risk of recovering nothing. This type of practice is viable only if attorneys, having received nothing for their work on some cases, receive more in other cases than they would if they charged hourly fees. Courts have long recognized this reality. *See, e.g., Hensley v. Eckerhart*, 461 U.S. 424, 448 (1983) (noting that "[a]ttorneys who take cases on contingency, thus deferring

[2] There are numerous examples of cases in which a one-third fee was approved. *See, e.g., Roberts v. TJX Companies, Inc*., 2016 WL 8677312, at *13–14 (D. Mass. Sep. 30, 2016) (awarding fees of one-third of $4,750,000 common fund); *Scovil v. FedEx Ground Package System, Inc*., 2014 WL 1057079, at *5 (D.Me. Mar. 14, 2014) (awarding fees and costs equal to one-third of $5,794,200 common fund); *In re Relafen Antitrust Litigation*, 231 F.R.D. at 82 (awarding fees equal to one-third of $75,000,000 settlement fund).

payment of their fees until the case has ended and taking upon themselves the risk that they will receive no payment at all, generally receive far more in winning cases than they would if they charged an hourly rate"); *In re Union Carbide Corp. Consumer Products Business Securities Litigation*, 724 F. Supp. 160, 168 (S.D.N.Y. 1989) ("Contingent fee arrangements implicitly recognize the risk factor in litigation and that the winning cases must help pay for the losing ones if a lawyer who represents impecunious plaintiffs, or those plaintiffs not so fully committed as to put their own money where their mouth is, will remain solvent and available to serve the public interest."). By permitting clients to obtain attorneys without having to pay hourly fees, this system provides critical access to the courts for people who otherwise would not be able to find competent counsel to represent them. That access is particularly important for the effective enforcement of public protection statutes, such as the laws at issue in this case. It is well recognized that "private suits provide a significant supplement to the limited resources available to [government enforcement agencies] for enforcing [public protection] laws and deterring violations." *Reiter v. Sonotone Corp*., 442 U.S. 330, 344 (1979).

To the extent the Court deems it necessary or appropriate to compare the requested award for fees and costs to class counsel's accrued fees and costs, the requested award is plainly reasonable. To date, class counsel have incurred fees of at least $527,500 in connection with the initial case investigation and development, a motion to dismiss, extensive discovery practice (including, among other things, numerous depositions and a review of thousands of documents), a motion for summary judgment, Daubert motions, motions to decertify, motions in limine, extensive trial preparations, and an extended settlement process. (Affidavit of Stephen Churchill, Ex. 1, ¶ 10). Class counsel expect to spend considerably more time with the final settlement approval and administration process. (*Id.*). In addition, class counsel have paid out-of-pocket

costs of at least $148,247.18 for filing fees, deposition transcripts, and experts. (*Id.* ¶ 11). As a result, the proposed award for fees and costs of $110,000 is less than class counsel's out-of-pocket costs, even before accounting for the substantial attorneys' fees that were incurred. Under the law, class counsel generally are entitled to recover a *multiplier* of their fees and costs,[3] but in this case, class counsel are seeking only a fraction of their fees and costs.

**Conclusion**

For the foregoing reasons, Plaintiffs respectfully request that the Court approve an award of fees and costs in the amount of $110,000 from the settlement fund in this case.

CONNIE SELLERS and SEAN COOPER, individually and as the representatives of a class of similarly situated persons and on behalf of The Boston College 401(k) Retirement Plan I and The Boston College 401(k) Retirement Plan II,

/s/ *Stephen Churchill*
Stephen Churchill, BBO #564158
Osvaldo Vazquez, *admitted pro hac vice*
FAIR WORK, P.C.
192 South Street, Suite 450
Boston, MA 02111
Tel. (617) 607-3260
Fax. (617) 488-2261
steve@fairworklaw.com
oz@fairworklaw.com

Dated: November 22, 2024

[3] *See, e.g., In re Puerto Rican Cabotage Antitrust Litigation*, 815 F. Supp. 2d 448, 465 (D. Puerto Rico 2011) (citing decisions approving multipliers of 2.02, 3.0, 1.97, 2.697, and 3.5) (citations omitted).

**CERTIFICATE OF SERVICE**

I certify that on this date a copy of the foregoing document was served via electronic mail on all counsel of record and is being posted on the settlement website that is available to all settlement class members, at https://apexclassaction.com/Sellerscafaexhibits/.

Dated: November 22, 2024

/s/ *Stephen Churchill*
Stephen Churchill